FISH *v.* THOMPSON.

1. LANDLORD AND TENANT—AGREEMENT TO SURRENDER—BREACH —SUMMARY PROCEEDINGS.

An agreement by a tenant to surrender his lease at a future date cannot be enforced by summary proceedings, but the landlord's remedy, in case of a breach of the agreement, is an action for damages.

2. SAME.

Defendant, who had rented a house for a year, and gone into possession, notified the owner, before the expiration of the term, that she would like to vacate the premises, and was advised that she would be held for the year's rent unless another tenant could be procured. Afterwards B., desiring to rent the house, had several interviews with defendant, who informed her that she was going to leave, and finally fixed a time therefor, and told B. that she could put her goods in the house, which B., having taken a lease from the owner, proceeded to do. Defendant failed to vacate at the time agreed on, and the owner brought summary proceedings to recover possession. *Held*, that there was no actual surrender of the premises pursuant to the agreement, in the absence of which the suit could not be maintained.

Error to Eaton; Smith, J. Submitted November 13, 1901. Decided January 28, 1902.

Summary proceedings by Jane Fish against Mary A. Thompson to recover the possession of leased premises. From a judgment for complainant, defendant brings error. Reversed.

This case is brought to this court upon writ of error from the circuit court for the county of Eaton, and is an action of summary proceedings to recover the possession of land. The facts, as shown by the testimony of witnesses for the plaintiff, are as follows:

Plaintiff, Jane Fish, is the owner of a house and lot in the city of Eaton Rapids, described as lot 2 of block 7 in Dutton & Leonard's addition to the village (now city) of Eaton Rapids. In April, 1900, plaintiff, through her agent, one Floyd Peterson, rented the premises to defendant, Mary A. Thompson, for the period of one year, at a rental of $7 per month. The defendant took possession of the premises on the 12th day of April, 1900. The lease was verbal.

About the 1st of September, defendant, during a conversation with Peterson, the agent of plaintiff, expressed a desire to vacate the premises. Peterson testifies that he

made no answer of any kind, and that, about two or three weeks later, she again spoke of leaving the place, on the ground that the rent was too high, and that later, some time in October, she again expressed a desire to leave. Peterson answered, asking her if she knew she had rented the place for a year, and told her that, if she left the place before the year was out, he should hold her for the year's rent, unless he got another tenant.   This was the last conversation he had with her about leaving the place.

In the meantime, about September 1st, one Maria Bishop called at the premises, in company with a Mr. Skinner, and was informed by Mrs. Thompson that she did not intend to keep the place.   Just a week later, Mrs. Bishop again called, and saw Mrs. Thompson about vacating the place; and later, about September 20th, she called at the premises the third time for the same purpose, and was informed by Mrs. Thompson that she would leave the place at some time between the first and middle of November,—Mrs. Thompson finally saying that she would set the time at the middle of November.   And thereupon Mrs. Bishop moved some furniture into one room of the house, drew some wood upon the lot, and put a few vegetables in the cellar; Mrs. Thompson having previously told her that she could put goods in the house.

Some time prior to the last talk Peterson and Mrs. Thompson had about her leaving the place, and, according to the testimony of Mr. Peterson, about September 20th, Mrs. Bishop leased the premises from Peterson for one year, with the privilege of two.   This, also, was a verbal lease.   There was no contract or agreement between Peterson, Mrs. Thompson, and Mrs. Bishop concerning what should be considered as giving up and accepting possession of the premises, or that the placing of the goods in the house by Mrs. Bishop should be considered as the giving up of possession by Mrs. Thompson, and the receiving of possession by Peterson.

Mrs. Thompson remained in possession of the premises, and continued to occupy the house with her family; and

on the 28th day of November, 1900, complaint was made and summons issued for the purpose of recovering possession of the property, under 3 Comp. Laws, §§ 11164–11180. The case was tried before a justice of the peace December 12, 1900, and plaintiff recovered. Appeal was taken to the circuit court, where plaintiff again recovered.

*Elmer N. Peters,* for appellant.

*Fred J. Slayton (Russell C. Ostrander,* of counsel), for appellee.

MONTGOMERY, J. *(after stating the facts).* The circuit judge charged the jury as follows:

"I charge you, as a matter of law, that an oral agreement made by defendant in September or October to vacate and give up possession of the premises and surrender her rights under the lease to plaintiff or her agent, Mr. Peterson, on November 15th, in consideration that she would be released from her obligation to pay rent for the balance of the year, would not terminate her right to hold possession of the premises, unless, in pursuance of such agreement, she did actually vacate the premises, or a portion of them, * * * and complainant, or her agent, Mr. Peterson, by some unequivocal act, received back a portion of the premises. In other words, there must have been not only a promise by Mrs. Thompson to complainant or her agent, Peterson, to vacate the place and surrender her rights under the lease on November 15th, but this promise must have been acted upon by Mrs. Thompson, by vacating and giving up possession of a part of the premises, and by complainant or her agent accepting said part."

Error is assigned upon this instruction, and also upon the refusal of the court to direct a verdict for the defendant.

There seems to be no disagreement between counsel as to the law of the case. It is well settled that an agreement by a tenant to surrender at some time in the future the possession of lands does not, if broken, give the landlord the right to enforce the agreement by summary proceedings. He must resort to his action for damages in such

case. There must be, in addition to the agreement to surrender, an actual giving up of the lands to the landlord, or other person for him. See *Baumier* v. *Antiau,* 65 Mich. 31 (31 N. W. 888); *Id.,* 79 Mich. 509 (44 N. W. 939). Counsel for complainant recognize this rule, but they say:

"Defendant wanted to surrender. The situation was brought about enabling her to surrender, so as to satisfy her landlord. She did surrender both her lease and possession. How else can the fact be explained that Mrs. Bishop drew her property upon the premises? The fact that defendant was accorded the right to stay a few days, —to fix a leaving time,—for her own convenience, does not change the logic of the facts."

We do not think the case open to this inference, under the undisputed facts. It is not claimed that Mrs. Bishop, in moving some of her goods upon the premises, did so under the understanding that there was a *present* surrender of the premises. There was no suggestion on the part of any of the parties that the defendant was, from the date when these goods were placed upon the premises, to hold the same at the sufferance of Mrs. Bishop. Quite the reverse was true. Defendant was accommodating Mrs. Bishop, by permitting her to move some of her property upon the premises. It was not the intention to surrender these premises to Mrs. Bishop, and from thence on become her mere licensee. On the other hand, Mrs. Bishop was a licensee of the defendant. It is true that there was, in addition to this, an agreement to surrender on the 15th of November. But this was executory, and never acted upon. While the conduct of defendant has been somewhat captious, we are constrained to hold that she continued the tenant of complainant, and that recovery should not have been permitted.

The judgment will be reversed, and a new trial ordered.

HOOKER, C. J., MOORE and GRANT, JJ., concurred. LONG, J., took no part in the decision.