F. B. Norman Company,

*vs.*

E. I. duPont deNemours and Company.

*New Castle, Jan.* 17, 1920.

An offer by lessee to release a lessor from further obligation and to surrender the lease, which was not accepted, does not terminate the lease.

The failure of a lessee to insist on the lessor making the improvements he agreed to make before delivering possession of the premises, the making of which was delayed by the inability to procure a permit, was not laches, where the lessee was not shown to have known that the objection to procure the permit had been obviated so that performance was possible.

Where lessor agreed to make certain alterations in the premises to fit them for lessee's use, which alterations were specifically agreed on, the fact that the building inspector required other things to be done in connection with the alterations so as to make them more expensive does not bar lessee's right to specific performance of the lease.

A lease of real property, like other contracts, concerning land, will be specifically enforced in equity, though lessee has a statutory remedy to recover possession, or may sue in damages, land being assumed to have a peculiar value to parties contracting therefor, so that damages is not an adequate remedy.

Where the lessor agreed to improve the premises to fit them for lessee's use, the lessee's legal action in ejectment or for possession of the premises is not adequate and complete, and equity will grant him a decree for specific performance of the contract.

BILL FOR SPECIFIC PERFORMANCE of a contract to lease real estate. The cause was heard on bill, answer, testimony of witnesses heard orally by the Chancellor and exhibits. In addition to the other facts stated in the opinion of the Chancellor, the following letters were put in evidence:

"Wilmington, Del., March 13th, 1919.

"Attention of Mr. Cauffiel.

"E. I. Du Pont de Nemours Co., Du Pont Building, Wilmington, Delaware—Gentlemen: The uncertainties of your being in a position to let us occupy the property and building known as the Hammond Laundry Building has made it necessary for us to make other arrangements. You are therefore, released from any further obligations to the F. B. Norman Co. and upon request by letter you may have our copy of lease.

"Very truly yours,

"F. B. Norman Company,
"F. B. Norman, President."

"April 1, 1919.

"F. B. Norman Company, 8th & Shipley Sts., Wilmington, Delaware—Gentlemen: Confirming conversation over telephone this date; I am sorry to find that the Hammond Laundry is not in readiness to come up to your expectations. I have been absent from the City for the past month. However, we are going to rush this through, and hope to be able to advise you at an early date, that you may occupy it. Very truly yours,

Daniel Cauffiel, Manager."

"DC/MLD.

"May 16, 1919.

"F. B. Norman Company, 7th & Shipley Sts., Wilmington, Delaware—Gentlemen: Referring to your letter of March 13th referring to lease between your Company and this Company, for the Hammond Laundry, and the uncertainty of the City Building Inspector granting this permission.

"While we believe that this permission will finally be granted, we held in reserve space for our requirements as long as it was possible to do so, in

the hope that the permit would be granted. However, we were obliged to give up this space because of the uncertainty of the building inspector's decision.

"We have now decided to still continue to use part of the Hammond Laundry, up until such time as they will grant permission to make the changes, bearing in mind at all times, that we shall give you the refusal of the Hammond Laundry at the time the changes are made, or permission granted by the Building Inspector.

"Trusting this decision will not inconvenience you, and that you will return the lease as referred to in your letter of March 13th, beg to remain, Very truly yours,

"Daniel Cauffiel, Manager."

*George N. Davis*, for complainant.

*G. Dare Hopkins*, for defendant.

THE CHANCELLOR. By lease dated January 28, 1912, the defendant leased to the complainant a lot of land and building on West Eleventh Street, in Wilmington, for five years at a money rent. The lessor agreed to make certain repairs and improvements theretofore agreed on, consisting of structural changes to adapt the building to the uses of the business of the complainant, and if they were not completed by February 1 the occupancy under the lease would begin upon their completion. There was delay in getting from the Building Inspector a permit for the improvements, and the permit could not have been obtained by the defendant until June 21. Thereafter there was no reason why the defendant could not have made the contemplated changes in the building, though the cost of doing so would have been greater than the earlier estimate thereof.

The lessor claims to have been released by the lessee from all obligations under the lease by a letter of the latter dated March 13, 1919, in which it was stated that the uncertainties as to the lessor being in a position to give possession had made it necessary for the lessee "to make other arrangements," and the lessor was in terms "released from any further obligations" to the lessee, followed by an offer by the lessee to return its copy of the lease "upon request by letter."

Obviously if accepted, or if the lessor had so acted as that its acceptance could reasonably have been implied, this letter was sufficient to relieve the lessor of a further duty to perform the

contract. On the other hand, it is not clear that the lessee then had a right to terminate the lease against the wishes of the lessor. But it is unimportant to consider this point, because after the letter of March 13 had been received by the defendant, there were conferences between the parties as to the continuance of the relationship created by the lease, and by letter dated April 1, Daniel Cauffiel, acting for the lessor, and in confirmation of such prior conversations, expressed regret that the building was not in readiness to come up to the expection of the lessee, and said:

"However, we are going to rush this through and hope to be able to advise you at an early date that you may occupy it," (meaning occupy the leased building).

There was nothing in the prior conversations which justified any special interpretation to this letter, for those conversations related to no other transaction between the parties than the lease, the lessee inquiring as to when the changes would be made and the lessor explaining delays. At this time the lessee desired to go on with the lease, and up to this time nothing had been said or done by the lessor to the contrary, or to indicate that the letter of March 13 had been adopted by it as a finality in terminating the lease.

It is very clear, then, that the lessee was justified in interpreting the letter of April 1 as a rejection of its effort to terminate the lease. To hold otherwise would imply deceit by the writer of the letter. The letter referred not to a new proposition, but to the old one, and thereafter neither party could say, as against the other, that the lessor had been effectively discharged from its obligation to the lessee. Consequently the lessee thereafter had a right to expect that the building would as soon as practicable be put in condition for its occupancy under the lease.

For the lessee it was explained that because of delays of the lessor as to the improvements after the making of the lease the lessee desired to acquire the use of other premises, and endeavored by the letter of March 13 to obtain a release from its obligation to the defendant, but having no reply thereto gave up the effort to get other quarters, and reverted to the lease. Confirmation of this is found in the letter of the defendant of April 1 referring to conversations.

From April 1 to May 16 F. B. Norman, for the complainant, made at various times inquiries of the defendant, showing a desire and intention to carry out the lease, but as the permit was not obtainable until June 21 the improvements were not made. Cauffiel, for the defendant, sent the complainant an enigmatical letter dated May 16 referring to the delay as to the permit, and saying in substance that the defendant company would continue to use the building until a permit be obtained, and when obtained would give the complainant company "refusal" of the building, and asked for a return of the lease. What was the effect of this letter on the rights of the complainant? None. The offer of the complainant to abandon its rights under the lease had been rejected by the defendant, and the parties had thereafter, and at least to May 16, acted as if each intended to perform. By the letter of May 16 the lessor tried to accept a proposition which did not exist, the one made having been previously declined by the defendant. The defendant could not in that way take away the rights of the lessee. Without necessarily relinquishing its advantage Mr. Norman suggested to Cauffiel that the defendant use the building of the complainant on Shipley Street, because in the letter of May 16 Cauffiel had stated as a reason for desiring to cancel the lease that the defendant company wanted to continue to use part of the demised property. The suggestion of Norman was a new element in the dealings, but it has no significance or evidential value to show an abandonment by the complainant of its rights under the lease.

After June 21 the Building Inspector was empowered to give the permit and this was known by the defendant company. From early in June to July 10 Mr. Norman was out of the city, and there is no evidence that he, or any officer of the complainant company, knew that the Building Inspector had authority to grant the permit. No reply was made to the letter of May 16, and matters drifted along again, Norman after his return on July 10 making no inquiries as to the delays in making the improvements, or demand for diligence or performance. When informed through the newspapers that the property had been sold by the defendant, the complainant promptly, by letter of August 13, demanded performance, and the bill was filed August 22, 1919.

Assuming that the letter of May 16 may fairly be regarded

as a declaration by the lessor of its intention to terminate the lease, which at that time was a subsisting agreement, performance thereof being held up by the Building Inspector and without fault of either of the parties, the important inquiry is whether inferentially the lessee agreed to terminate the lease, there being no evidence of a direct acceptance or declination of the proposition by the defendant to that effect. As above stated, the suggestion of Norman that the lessor use the lessee's property on Shipley Street did not show acquiescence in the letter of May 16. Neither did the inattention of the lessee between May 16 and August 13 of itself show acquiescence or abandonment, for it could stand on its rights under the lease, and did not know that the legal obstruction of the want of a permit had been removed. The lessee had a right to ignore the letter of May 16, and did so, and it is significant that the lease was not returned by it to the lessor, as requested by the latter.

Therefore the lease is still in force, and if there is no legal difficulty as to the form of remedy the lessee has a right to have the lessor perform the contract of the lease, and has not abandoned or released its right thereto. Neither has it estopped itself from enforcing its rights thereunder. The lessee has done no act, or omitted doing any act, which it was its duty to do, whereby the lessor was misled into a position to its disadvantage. The offer of the lessee to rescind the contract was declined, and the later attempt of the lessor to terminate the lessee's rights was not directly accepted or declined, and nothing was said or done by the lessee from which acceptance could reasonably or fairly have been implied, and the lessor was not justly misled to imply approval from the inaction of the lessee. Until a permit therefor was available to the lessor it was not in default for not making the improvements and the lessee not knowing the permit was available was not guilty of laches by not enforcing its rights earlier.

Proof of an abandonment of a contract inferred from circumstances or conduct of the parties inconsistent with an intention to perform must be clear to be effective. The burden of showing a recission, release or discharge of the lease was upon the lessor, and it has not sustained the burden. Obviously the parties here

would not now be at odds with each other if there had been more open frankness on both sides in their dealings with each other.

Are there practical difficulties, legal or otherwise, to granting the relief prayed for, or other relief? The bill prays, (1) that the defendant be required to make the repairs agreed upon, and (2) that it be required to deliver to the complainant possession of the premises.

Without objection by the defendant it was stated at the hearing by the solicitor for the complainant, as an admitted fact, that the legal title to the premises was still in the defendant, though there was a reference to its having made some agreement to sell it. The mere fact that the defendant had agreed to sell the demised premises does not bar the complainant from a decree of specific performance, for the sale may have been made subject to the rights of the complainant, or the purchaser may have had notice of the lease.

There is no uncertainty as to the character of the improvements referred to in the lease, for they had in general been agreed upon before the lease was made, and are shown in certain drawings in evidence in the case. Probably to make these improvements for the business of the complainant would entail doing other things required by the Building Inspector, and the expense of the improvements may therefore be greater then contemplated; but that does not of itself affect the right of the lessee to have them made.

It is almost a matter of course that a court of equity will enforce specific performance of contracts concerning land, for all land is assumed to have a peculiar value to those who contract as to it, so that damages for breach of the contract is not an adequate remedy. Agreements to give or renew a lease are frequently enforced. *Matthes v. Wier,* 10 *Del. Ch.* 63, 84 *Atl.* 878. Ordinarily when a term has been granted and the lessor prevents the lessee from entering into possession an action of ejectment, or perhaps some other summary statutory remedy will lie in order to put the lessee in possession. 1 *Tiffany on Landlord & Tenant, p.* 8. Or he may rescind the contract and sue for damages. But the lessee is entitled to have the land itself and not money damages.

The action of ejectment or other possessory action is not a

full, adequate and complete remedy for this lessee under this contract, for though it put the complainant in possession of the demised premises the lessee would not have the improvements to which it was entitled. True, it could make them and recover payment therefor from the lessor, but under the lease it is entitled to have the premises as improved by the lessor. Then, too, the lessee has a right to the land, and is not required to accept damages.

The conclusion is, that the complainant is entitled to a decree commanding performance by the defendant of the contract contained in the lease, and in particular that part thereof by which the defendant undertakes to make repairs and then deliver to the complainant possession of the premises upon the making of said repairs.

Let a decree be entered accordingly.