PEOPLES EXPRESS, INCORPORATED, *vs.* FREDERICK J. QUINN & others.

Suffolk.    January 14, 1920. — February 28, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, & CARROLL, JJ.

*Equity Jurisdiction,* To enjoin interference by lessor with lessee's possession, Plaintiff must come into court with clean hands. *Landlord and Tenant,* Peaceful possession. *Estoppel. Frauds, Statute of.*

An express company, which was the lessee of a portion of a building under a lease in writing for five years, made a sublease of a part thereof with the consent of the lessor. Less than a year after the lease was given, the lessor, desiring to tear down the building occupied by the lessee and his subtenant and to erect a new building on its site, orally agreed with the lessee and the subtenant that they should surrender possession of the leased premises and that the lessor should provide for them rent free other premises in which to carry on their respective businesses until the new building should be ready for occupancy, should pay all their moving expenses, and, when the new building was completed, should give to them a lease of a portion thereof for the unexpired term of their leases and at the same rental. The lessee and sublessee visited the new premises offered by the lessor and orally agreed to accept them. Thereafter, in reliance upon such oral agreements, the lessor hired the new premises for temporary occupancy by the lessee and sublessee, made a contract for the excavation and mason work for the new building, executed to a third party a lease of a part of the building to be erected, which included a part of the premises described in the plaintiff's lease, advertised the structures then upon the premises for sale and sold them. The contractor began work and was excavating in the rear of the leased premises when the lessee forbade him and brought a suit in equity to enjoin the lessor from further operations. The sublessee stood by his oral agreement although urged by the lessee to repudiate it because it was not in writing. Besides evidence of the foregoing facts, there was evidence warranting a finding that the lessee intentionally refrained from putting his agreement into writing, intending to take advantage of that fact later. A decree was entered dismissing the bill. *Held,* without determining whether there had been a surrender of the premises by the lessee, that the decree was well warranted, because the facts warranted findings, that the plaintiff had estopped himself from relying on the fact that his agreement was not in writing and that the granting of an injunction would operate inequitably.

BILL IN EQUITY, filed in the Superior Court on March 31, 1919, to enjoin the defendants, owners and lessors of a building occupied in part by the plaintiff as lessee, from tearing down the leased premises.

In the Superior Court, the suit was heard by *Jenney,* J., a commissioner having been appointed under Equity Rule 35 to take the evidence. Material facts found by the judge are described in the opinion. By order of the judge, a decree was entered dismissing the bill with costs. The plaintiff appealed.

*J. H. Duffy,* for the plaintiff.

*N. N. Jones,* for the defendants.

DE COURCY, J. The plaintiff, as lessee, seeks by this bill in equity to restrain the defendants, who are the lessors and owners, from doing certain acts in the process of tearing down a building in which the leased premises are situated. The following material facts were found by the trial judge.

The defendants, copartners under the name of Amesbury Associates, executed and delivered to the plaintiff a lease of a store and room overhead, a portion of a building numbered 4 Market Square in Amesbury, for five years from October 1, 1918. The plaintiff sublet a portion of the premises to one Sam Levine, with the consent of the defendants. In March, 1919, the associates desired to erect a new brick building on the site of the leased premises and of adjoining land owned by them, and had plans prepared for that purpose. They had interviews with Levine and one McCarthy (who was duly authorized to act for the plaintiff); and it was orally agreed by all the parties, in substance, as follows: The plaintiff and Levine should surrender possession of the leased premises; the defendants should provide for them, free of rent, until the new building was ready for occupation, a store in which to carry on their business, and bear all the expense of moving their goods and effects to the new location; and they should give the plaintiff and Levine a lease of a store in the contemplated building for a time as long as the remainder of their present term, and at the same rental. McCarthy and Levine visited the store which was to be provided for their use during the construction of the new building, and agreed to accept the same.

After said oral agreement was made, and in reliance thereon, the defendants hired the store for the temporary occupancy of the

plaintiff and Levine; entered into a contract with one Watkins in the sum of $4,450 for the excavation and mason work required for the new structure; and executed a lease to the F. W. Woolworth Company of premises constituting part of the building to be erected and comprising a portion of the location described in the present lease of the plaintiff. They advertised the old houses for sale and sold them for $25 each. Watkins, under his contract, began excavating in the rear of the leased building and tearing down the adjoining one, when the plaintiff forbade the defendants from entering upon the leased premises and brought this suit. No objection was made by Levine. He stood by his oral agreement, although, according to his testimony, McCarthy urged him to repudiate it as not being binding because not in writing.

A decree was entered dismissing the plaintiff's bill. It is argued by the defendants, besides other matters, that the decree was warranted on the ground that there was a surrender of the plaintiff's estate in the premises by operation of law within the meaning of R. L. c. 127, § 3. The trial judge did not make a finding that there was a surrender, and we are not prepared to say that the facts establish one. Even if we assume that the acts of the defendants were equivalent to taking possession of the leased premises, it does not appear that the plaintiff had abandoned its possession. *Amory* v. *Kannoffsky,* 117 Mass. 351. *Talbot* v. *Whipple,* 14 Allen, 177.

But the judge was well warranted in denying an injunction to the plaintiff in the circumstances here disclosed. McCarthy, who was its treasurer, manager, and owner of substantially all its capital stock, and who, the judge found, was duly authorized to act in its behalf, made a fair agreement with the defendants which he now repudiates, apparently because it was not in writing. There was evidence that when it was proposed to embody in writing the agreement between the plaintiff and Levine, McCarthy said "There is no need of signing this paper, because I will see my lawyer and get him to fix up a paper for Sam to sign, and then there wont be any chance for any law suit between Sam and I;" that he said nothing about any paper between his company and the defendants; and that he told them it was all right, and they might go ahead and make their contracts to erect the building. In reliance on his oral agreement and assurances the defendants in good faith proceeded

with their plans. As the trial judge found, "if prevented from tearing down the old building described in the lease to the plaintiff, and constructing a new building on said premises, they would be subject to serious expense, and possibly to considerable litigation." There is some evidence from which it might be inferred that, while giving the defendants the impression that he would make no trouble for them, McCarthy intentionally refrained from putting the agreement into writing with a purpose to take advantage of that fact later. The judge well may have concluded that the plaintiff had estopped itself from setting up as a basis for equitable relief, the fact that its agreement was not in writing. As was said in *Davis* v. *Downer*, 210 Mass. 573, 576, "Where a person has been induced to make expenditures upon land, to construct improvements thereon or to change his situation materially in reliance upon the performance of the oral agreement and in expectation of the rights to be acquired thereby, refusal to carry out the agreement. is not merely deprivation of the rights it was intended to confer, which alone is within the statute of frauds, but is in addition 'an infliction of an unjust and unconscientious injury and loss. In such case, the party is held, by force of his acts or silent acquiescence, which have misled the other to his harm, to be estopped from setting up the statute of frauds.'" *Williams* v. *Carty*, 205 Mass. 396. *Banaghan* v. *Malaney*, 200 Mass. 46. *Fenner* v. *Blake*, [1900] 1 Q. B. 426. And presumably the trial judge took into consideration the additional fact that the granting of an injunction would operate inequitably to the defendants and subject them to a loss out of all proportion to the actual injury, if any, suffered by the plaintiff. *Levi* v. *Worcester Consolidated Street Railway*, 193 Mass. 116.

*Decree affirmed, with costs.*