# CHARLESTON.

GEORGE S. REES *et al.* v. EMMONS COAL MINING COMPANY OF WEST VIRGINIA.

Submitted February 9, 1921.    Decided February 22, 1921.

1.    EQUITY—*Rule as to Amendments of Bill Stated.*

The rule of equity pleading, inhibiting departure from the subject of an original bill, in an amended bill, does not forbid

the introduction by amendment, of what are technically known as cases or causes of action, different from that set up in the original bill, but it does preclude introduction of causes of action foreign to the subject matter of the original bill, or the act, agreement or transaction out of which it arose. Causes of action clearly germane to the subject matter of the original bill may be introduced or added by way of amendment. (p. 8).

2. SAME—*Right to Accounting Held Germane to Bill for Injunction to Restrain Trespass.*

Right to an accounting for coal or other minerals taken from land to which a plaintiff has good title, by a trespasser, is germane to the subject matter of a bill seeking an injunction to restrain such trespass, and may be united with the cause of action stated in the original bill, by an amendment thereof. (p. 10).

3. SAME—*Amendment of Bill Praying Accounting for Minerals Removed and Showing Pendency of Action of Assumpsit Therefor Not Demurrable.*

Even though an action of assumpsit is pending in a court of law for recovery of the value of the mineral so removed, an amendment to such bill, praying an accounting therefor in such suit, is permissible, and an admission in the amended bill, of the pendency of such action, is not tenable ground of demurrer. (p. 10).

4. ABATEMENT AND REVIVAL—*Pendency of Action at Law for Cause Asserted in Equity May Not be Set Up in the Equity Court.*

Pendency of an action at law for a cause of action asserted in a court of equity, cannot be set up by plea or otherwise, either in bar or in abatement of the equity suit. It merely affords ground of requirement of an election in such suit, as to which proceeding the plaintiff will dismiss. (p. 11).

5. EQUITY—*If Bill in Equity Justifies Any Relief Sought Thereby, General Demurrer Properly Overruled.*

If a bill in equity is sufficient for any relief sought thereby, it is proper to overrule a general demurrer to it. (p. 11).

6. APPEAL AND ERROR—*Demurrer, Treated as General in Trial Court, Will be so Treated on Appeal.*

If a demurrer to a bill states several grounds or reasons for insufficiency of the bill, specifying some of its parts as being objectionable, and has been disposed of by the trial court, as a general demurrer going to the bill as a whole, without objection, it will be regarded as such a demurrer in the appellate court on an appeal. (p. 11).

7.  INJUNCTION—*Question of Title Does Not Justify Exclusion from Court of Equity.*

A controversy involving a claim of equitable title to real estate cannot be excluded from a court of equity, merely because it involves a question of title.   (p. 12).

8.  MINES AND MINERALS—*Right to Remove Coal Held Not Title to Coal in Place.*

Right to mine and remove coal from a tract of land, on payment therefor at an agreed price per ton, without limit, restriction or obligation as to quantities or duration, is not title to the coal in place, legal or equitable.   (p. 13).

9.  SAME—*Miner of Coal on Land of Another Held a Tenant from Year to Year.*

If, under such an arrangement effected by a verbal agreement between the owner of a tract of land and the party upon whom such right is conferred, mining operations are conducted on the land and royalties paid at the stipulated rate, for several years, the possessor of such right and occupant of the mine, is a tenant thereof from year to year, and cannot be prevented from proper mining in the land, by injunction or otherwise, at the instance of the landlord, until after termination of the tenancy, in some way.   (p. 13).

10.  LANDLORD AND TENANT—*Tenancy from Year to Year Assignable.*

A tenancy from year to year, not terminated in any of the ways authorized by law, is assignable, and an assignee thereof, has the same estate and right therein as his assignor had.   (p. 15).

11.  SAME—*Statutory Notice Necessary to Terminate Tenancy from Year to Year.*

In the absence of an agreement dispensing with the requirement of notice, provided by sec. 5 of ch. 93 of the Code, a landlord cannot terminate such a tenancy against the will of the tenant otherwise than by the giving of such notice, which must be in writing and antedate expiration of the tenancy year, by at least three months, and express intention to terminate it at the end of such year.   (p. 15).

12.  SAME—*Proof of Termination of Tenancy by Surrender Must be Clear; Unexecuted Agreement Held Not a Surrender by Operation of Law.*

To establish termination of such a tenancy by surrender in fact, the proof must be clear and unequivocal.   An agree-

ment to surrender, not executed, does not effect a surrender by operation of law.  (p. 15).

13.  APPEAL AND ERROR—*On Reversal of Decree for Injunction and Accounting for Coal Mined, Bill Dismissed with Right to Bring Other Actions.*

A bill and an amended bill seeking an injunction restraining the mining of coal and an accounting for coal mined, on the theory of total lack of right in the defendant to mine the coal, and prosecuted to a decree in favor of the plaintiff, settling the principles of the cause, will be dismissed, on reversal of the decree, upon a finding that the defendant had right, as tenant of the plaintiff, to mine the coal and still has it, with a saving of right in the plaintiff to prosecute any proper suit at law or in equity, to obtain compensation for coal mined and not paid for, at the agreed price per ton.  (p. 15).

Appeal from Circuit Court, Mineral County.

Suit by George S. Rees and others against the Emmons Coal Mining Company of West Virginia for an injunction and an accounting.  Decree for plaintiffs, and defendant appeals.

*Reversed, injunction dissolved, and bill dismissed.*

*L. J. Forman, Wm. MacDonald, Conlen, Brinton & Acker* and *J. T. Manning, Jr.,* for appellant.

*Chas. N. Finnell* and *Taylor Morrison,* for appellees.

POFFENBARGER, JUDGE:

The decree brought up for review by this appeal, as one settling the principles of the cause, is predicated, for the most part, on an amended bill to which a demurrer was interposed on the ground that the matter set up in it constituted a departure from the original bill and the further ground that such matter constituted a cause of action set up in an action of assumpsit previously instituted against the defendant and pending at the date of the amendment.    Other incidental or collateral allegations thereof were relied upon as grounds of demurrer.    There was also a demurrer to the original bill.    Overruling the demurrers, at the hearing on answers, replications and evidence, the court entered a decree affirming the right of the plaintiff to the relief sought and referred the cause to a commissioner for the taking of an account.

The litigation involves claims and contentions respecting

title to the coal in a tract of land and mining rights therein. On the original bill, a temporary injunction was sought and obtained, inhibiting, restraining and enjoining the defendant from mining the coal. At or about the date of the filing of that bill and the award of the injunction thereon, the plaintiff instituted an action of assumpsit for the recovery of the value of coal mined, removed and sold. About seven months later, the defendant moved the court for a modification of the injunction order, permitting it to enter the mines and remove therefrom the rails, spikes, ties, electric wires and other property it had placed and installed therein for mining purposes. At the same time, the plaintiffs tendered and were permitted to file the amended bill and the defendant filed its demurrer thereto. The motion was overruled and the cause continued, but the plaintiffs were required to execute an injunction bond in the penalty of $2,000.00, in addition to the bond previously given in the penalty of $1,000.00. Answers to both the original and amended bills were filed, depositions taken, the cause submitted upon the bills, answers, replications, motions to modify the injunction and to dissolve it and depositions taken and filed by both parties, and decree entered as above stated.

Sufficiency of the original bill is apparent, and it may be conceded in the argument submitted, which is general and does not seem to be limited in any instance to that bill standing alone. The bill alleges perfect and complete title in the plaintiffs and a mere verbal license in the defendant, to mine coal from the property, and revocation of such license, in conformity with the agreement under which it was granted. It then alleges that, notwithstanding the revocation, the defendant had continued its mining operations in the land. All of these facts, the demurrer concedes for its purposes, and no authority need be cited for the elementary and universally recognized proposition that equity will enjoin acts of trespass, working injury to the inheritance, and destruction thereof. In such cases, the legal remedy is wholly inadequate.

In so far as the demurrer to the amended bill is based upon the theory of a departure from the original bill or the making of a new case, it was properly overruled. The purposes of the two bills are closely allied. They pertain to the same general

subject matter.    Each seeks vindication of the right of the plaintiffs to the coal in the particular tract of land in question. The original bill invokes a measure of protection against the severance and removal thereof.    Its purpose is conservation and preservation of the remaining rights of the plaintiffs.    The amended bill pursues the same general purpose.    It seeks compensation for the coal already taken out.    Both pleadings have the same basis or foundation, the right of the plaintiffs to the coal in question.    The rule against departure in equity pleading does not preclude the introduction of a new cause of action in the technical sense of the term.    Stated with fair and reasonable accuracy, it forbids only the introduction of foreign causes of action.    A cause of action different from that originally set up, but allied with it and closely related to it, in subject matter, may be added or introduced by way of amendment.    In *Belton* v. *Apperson,* 26 Gratt. 207, a leading case on the subject, this doctrine is clearly propounded. In the opinion delivered in that case, Judge Staples, after having reviewed a number of English and American decisions, tersely stated his conclusion in the following terms:    "If these cases do not show that the plaintiff is permitted to make a new case, they at least show that he may  by his amendment so alter the frame and structure of his bill as to obtain an entirely different relief from that asked for originally.    This is founded upon good reason.    Why should the plaintiff be put to a new bill for different relief upon the same transaction when the object can be accomplished by an amendment.    If there is danger that the defendant will be injuriously affected by the amendment it will be refused, and the suit will be considered as pending only from the time of the amendment."    In *Lamb* v. *Cecil,* 25 W. Va. 288, the bill stated one cause of action and the proof disclosed an entirely different one, but closely related to that stated in the bill, and the plaintiff was permitted to amend his bill so as to make the cause of action therein stated conform to that proved. In *Doonan* v. *Glynn,* 26 W. Va. 225, the rule is stated thus: "But if in such case the proofs show that the plaintiff has a cause which entitles him to relief, that is of a similar nature to that alleged in his bill, and, such as might be made available by proper amendments of his bill, the court on the hearing should

not dismiss his bill without giving him an opportunity to amend within a reasonable time." That the rule precludes the introduction of foreign causes of action rather than merely different ones, is asserted in *Tidball* v. *Shenandoah National Bank,* 100 Va. 741, in these terms: "If the amendment seeks to assert rights and to enforce claims arising out of the same transaction, act, agreement, or obligation, however great may be the difference in the form of liability as contained in the amendment from that stated in the original bill, it will not be regarded as for a new cause of action." To limit the right of amendment to the case or the cause of action stated in the original bill would give it a scope much narrower than our decisions have accorded it. Exclusion of matters merely foreign to the general subject matter of the original pleading affords room for amendment and yet does not permit the litigation to spread beyond reasonable bounds. "Case" and "cause of action" have technical meanings and the right of amendment goes beyond them. Procedure in one suit, for an injunction to prevent extraction of minerals and for an accounting for minerals already taken out, is both permissible and usual. *Williamson* v. *Jones,* 39 W. Va. 231, 43 W. Va. 562; *South Penn Oil Co.* v. *Haught,* 71 W. Va. 720.

Our conclusion that the subject matter of the amended bill is germane to that of the original bill has important bearing upon another ground of demurrer, namely, that the amended bill sets up a cause of action for which an action at law is pending. This is not the case of an effort merely to transfer from a law court to an equity court, a cause of action for a legal demand. If it were, it would be necessary to allege the necessity and indispensability of discovery to the maintenance of the action. *Dudley* v. *Niswander,* 65 W. Va. 461; *Prewett* v. *Bank,* 66 W. Va. 184; *Thompson* v. *Whitaker Iron Co.,* 41 W. Va. 574. In such case, the necessity and indispensability of discovery constitute the only ground upon which the cause of action, after assertion thereof in the law court, can be transferred to and prosecuted in the equity court. Here the situation is different, there is an equitable cause of action pending in the equity court and the additional cause of action set up by the amended bill is germane thereto. In other words, the parties are already in

litigation in a court of equity, concerning the general subject matter of the two causes of action.    The amendment is not tantamount to the institution of a new suit, nor does it amount to a transfer of a single cause of action from one court into another, by way of election.    The transaction amounts only to a permissible broadening of the scope of a suit pending in a court of equity.

Though the amended bill discloses the pendency of an action at law for the principal cause of action therein set up, it is not ground of demurrer.    At law, the pendency of a former action for the same cause of action and between the same parties, both actions being at law, is matter of abatement, and, to be available, must be pleaded in abatement.    *Foley* v. *Ruley,* 43 W. Va. 513; *Riley* v. *Jarvis,* 43 W. Va. 43; *McCalister* v. *Harmon,* 97 Va. 543.    But the rule is different when one suit is at law and the other in equity.    The pendency of an action at law for the same cause of action as that set up in a suit in equity does not abate the latter.    It merely affords the defendant grounds for an application to the court for a rule against the plaintiff requiring him to elect whether he will prosecute the action at law or the suit in equity. *Williamson* v. *Paxton,* 18 Gratt. 475; *Priddy* v. *Hotchkiss,* 81 Va. 606; *Warwick* v. *Norvell,* 1 Rob. (Va.) 308.    Actions at law and suits in equity are so dissimilar in character that the pendency of one cannot be pleaded either in abatement or in bar of the other.    *Risher* v. *Wheeling Roofing and Cornice Co.,* 57 W. Va. 149; *Williamson* v. *Paxton,* cited.

Other grounds of demurrer relied upon in the argument submitted are prayers for discovery for a mandatory injunction to require the defendant to permit the plaintiff to enter the mine, through and over its property, for the purpose of ascertaining, by measurement, the quantity of coal taken from the mine and to aid in such work, by the running of its fan to supply fresh air throughout the workings.    Lack of merit in these grounds is perfectly obvious, if the demurrer is general, going to the whole of the amended bill.    In such case, it is only necessary to ascertain that the pleading demurred to sets up sufficient ground for some relief.    If it is sufficient in one respect, it is immaterial that it may not be good in others.    *City of Wheel-*

*ing.* v. *Chesapeake and Potomac Telephone Co.,* 82 W. Va. 208; *Trough* v. *Trough,* 59 W. Va. 464; *Miller* v. *Hare,* 43 W. Va. 647; *Shoe Co.* v. *Haught,* 41 W. Va. 279; *Gay* v. *Sheen,* 36 W. Va. 582. We have already demonstrated its sufficiency for an accounting. In the written demurrer filed, there is no expression of intention to challenge the sufficiency of any particular part of the bill and eliminate it. Without objection, it was treated as a general demurrer in the order disposing of it. It specifies objectionable purposes and prayers of the amended bill, but only by way of criticism of the pleading in its entirety. The references to the prayer for a mandatory injunction and the allegation of right to discovery are mere statements of grounds of a general demurrer.

Equity jurisdiction of the cause as developed by the pleadings and evidence is denied on the ground of dispute or controversy as to the title to the coal in question, under principles enunciated in *Freer* v. *Davis,* 52 W. Va. 1, and subsequent decisions adhering to the doctrine of that case. The defendant is the successor in title of another corporation known as the Buffalo Creek-Cumberland Coal Company. At some past date not disclosed, mining operations were started on what is known as the Hatfield-Hilles property at Bayard, West Virginia. Prior to the year 1917, the Buffalo Creek-Cumberland Coal Company owned and operated the property which was composed of the Hubbard tract and the James B. Rees tract, or one of them. It did not own the adjoining Job Aronhalt tract, which is the tract here involved, but it had a verbal arrangement with the owners thereof, George S. Rees and David A. Arnold, the plaintiffs in this cause, under which it was mining in that tract and paying the owners thereof seven cents per ton for the coal mined and taken therefrom. The defendant, directly or indirectly, took over the properties from the Buffalo Creek-Cumberland Coal Co. early in the year 1917, by a conveyance thereof and an assignment of all of the stock of the latter company. On or about the date of the defendant's acquisition of the property, which seems to have been in February, 1917, negotiations were opened between it and the plaintiffs for a lease or purchase of their coal in the Aronhalt tract and also for the coal in another tract known as the Woods land, on which

the plaintiffs claim to have had a lease.     Pending these ne-
gotiations which finally failed, the defendant continued its
mining operations in the Aronhalt tract with the consent of the
plaintiffs.     After the failure of the negotiations as to the Aron-
halt tract and the Woods tract, the plaintiffs, according to their
pleadings and evidence, revoked this permission, on the 15th
day of October, 1917, by a notice served upon the defendant, and
they say it agreed to stop its operation after that date, and, for
a long time, they supposed the mining had ceased.     But, some-
time in the year 1919, prior to the month of August, they dis-
covered that the defendant had never discontinued its opera-
tions, but had continued its mining of the coal, without having
ever rendered any account thereof or paid for it.     The answers
do not deny the legal title of the plaintiffs.    On the contrary,
they impliedly, if not expressly, admit it.     They expressly
aver a contract of purchase of the coal from the plaintiffs and a
breach of the contract on the part of the latter.     There is no
claim that it was ever conveyed to the defendant.     In view
of this situation, it is hardly necessary to observe that the de-
cision in *Freer* v. *Davis,* which merely excludes from equity
jurisdiction issues of fact as to legal title, has no application.
Upon its own showing, the defendant could have had nothing
more than an equitable title.

The adjudication of equitable as well as legal title in the
plaintiffs, upon the pleadings and evidence is challenged.     The
Buffalo Creek-Cumberland Coal Company owned and managed
by Hatfield and Hilles mined the coal under a verbal agreement,
permit or license for a period of years, probably three, four or
five, paying a royalty of seven cents per ton.     They were
under no obligation or restriction as to the quantity to be
mined yearly or otherwise.     There is no proof of any written
contract, memorandum or permit signed by the owners.     They
say they verbally assented to a loose proposition made to them
by Hatfield and Hilles or their company.     Under it, the min-
ing commenced and the royalties were paid.     Admitting this
in substance, but calling their right a lease, Hatfield and Hilles
say, however, they engaged in the mining and incurred the
expense of preparation and equipment, under the belief that
they were purchasers of all the coal in the tract, or lessees with

right to take all of it out, and would not have done so, except for such belief; and that, in their sale of the Buffalo Creek Company's property, they included such right as they or it had in the Aronhalt land. The Emmonses acting for their company claim likewise, that they understood the sale included such right and that it amounted to title to the coal. The contract between the Buffalo Creek-Cumberland Coal Co. and J. Grey Emmons does not specifically mention the coal in the Aronhalt tract. It specifies leasehold interests acquired from the McCullough Coal & Coke Co. and the Rees Coal Co. a seven acre tract of land owned in fee by the vendor, its mining plant, contracts for the sale of coal, certain accounts receivable, and then adds "all other property real and personal belonging to it," except certain accounts receivable. The Emmonses deny that they took a mere verbal permit from the plaintiffs to continue mining in the tract of land in question, pending negotiations for a formal lease or a conveyance of the coal. They say no objection to continuance of the mining was made, but that negotiations were suggested or started for sale of the coal to them at a flat price per acre, and that pending such negotiations they continued to mine as of right; and that, believing their title to be indefeasible, they installed better and more expensive equipment in the mine. The testimony of the plaintiffs to the effect that there were negotiations respecting a lease, soon after the Emmons Coal Company took charge of the mining operations, has some support, however, in correspondence. Letters dated in July, 1917, and written on behalf of that company, admit the advisability of some kind of a contract and suggest a lease at seven cents per ton, without a minimum royalty. Plaintiffs say they stood for that rate with a minimum royalty and that they rejected a counter proposition for a six cent rate with such a royalty. These negotiations ended about October, 1917, when the notice to cease mining was given. As to whether the defendant agreed to quit, there is square contradiction in the evidence. After that, if not before, there were negotiations for purchase of the property by the defendant, and a formal contract of sale of the coal in the Aronhalt and Woods tracts, bearing date Aug. 2,

1919, was prepared but not executed, and the temporary injunction was obtained, Aug. 9, 1919.

Some of the more important claims and contentions made on each side, respecting the substantive rights of the parties, are wholly untenable and have a decided tendency to obscure and conceal the real merits of the controversy. Neither the defendant nor its predecessor in right ever had any title, legal or equitable, to the coal in the Aronhalt tract of land. The plaintiffs clearly have both. But it does not necessarily follow that the defendant was a tenant at will or a trespasser after Oct. 15, 1917. Upon the admitted facts, the law pronounces the defendant's predecessor a tenant from year to year, and it suffices, without argument, to give the authorities so holding. *Drake* v. *O'Brien,* 83 W. Va. 678; *Sheets* v. *Allen,* 89 Pa. St. 47; *Moore* v. *Miller,* 8 Barr. (Pa.) 272; *Ganter* v. *Atkinson,* 35 Wis. 48. One of the incidents or qualities of that tenancy was assignability, and the defendant took it over by its contract and stood in the shoes of the Buffalo Creek Company. *Austin* v. *Thompson,* 45 N. H. 113; *Cody* v. *Quarterman,* 12 Ga. 386; *Pleasants* v. *Benson,* 14 East. 234; 18 Am. & Eng. Ency. L, 207.

Unless the tenancy has been terminated in some one of the modes provided by law, it still continues and the defendant is in no sense a trespasser and cannot be enjoined from further operation, until it has been terminated. *Drake* v. *O'Brien,* cited. Neither the verbal notice given October 12, 1917, for immediate cessation, or cessation October 15, 1917, nor the written notice later mailed, was sufficient to terminate it, since the statute requires notice in writing to be given three months prior to the end of the tenancy year. *Coffman* v. *Sammons,* 76 W. Va. 13; *Arbenz* v. *Exley, Watkins & Co.* 57 W. Va. 580.

Nor was it terminated by surrender. While the evidence is conflicting as to what was said, October 12, 1917, about cessation of mining, that of the plaintiffs is indefinite. It does not say the tenant offered to surrender its term and the offer was accepted. The purport of it is that there was a verbal notice to quit acquiesced in by the defendant and that the plaintiffs did not rely upon that alone. They deemed it advisable to give a written notice and did. Moreover, they were

not dealing with the tenancy as one from year to year. They regarded it as a tenancy' at will, wherefore they could not have treated the transaction as a surrender of a tenancy for a year. The law of surrender by agreement is strict. To comply with it, there must be an actual surrender *in praesenti*. An agreement to surrender does not effect it. *National Union Bldg. Assn.* v. *Brewer,* 41 Ill. App. 223; *Donahoe* v. *Rich,* 2 Ind. App. 540. This conversation occurred in Philadelphia and the mining was then going on in West Virginia. If there was a mere agreement to quit three days later, as seems to have been the case, there was no surrender in fact. Of course, there was none by operation of law, for the defendant never vacated the mine nor ceased to operate it.

From this conclusion, it results that the plaintiffs have entirely misconceived their rights and remedies. They are not entitled to enjoin further operation until they shall have terminated the tenancy of the defendant. Their right to compensation and an accounting arises under the contract of tenancy, the former being limited to seven cents per ton, and not out of a trespass. For that, they may or may not have an adequate remedy at law, if it shall become necessary for them to invoke any remedy. Now that the basic rights of the parties have been determined and fixed, there may be a settlement without further litigation. At any rate, the rights of the plaintiffs stand upon a basis entirely different from that set up in their bills. Presumptively, there will be no occasion for resort to a court of equity. Under these circumstances, we deem it proper to reverse the decree complained of, dissolve the injunction and dismiss both the original and amended bills, without prejudice to the right of the plaintiffs hereafter to prosecute any proper suit, either at law or in equity, to recover the unpaid royalties on the coal mined by the defendant from the Aronhalt tract of land, and a decree will be here entered accordingly. Costs in the court below as well as in this court will be decreed to the appellant.

*Reversed, injunction dissolved, and bill dismissed.*