[Crim. No. 9808.   Second Dist., Div. Four.   June 9, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES NOLE SIPULT, SR., et al., Defendants and Appellants.

Corinne S. Shulman, under appointment by the District Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Jack K. Weber and Lawrence L. Tapper, Deputy Attorneys General, for Plaintiff and Respondent.

JEFFERSON, J. — Defendants James Nole Sipult, Sr. (hereinafter referred to as Sipult), John Haupu Mahi (hereinafter referred to as Mahi) and Carl Eugene Hunt (hereinafter referred to as Hunt), originally were charged by information with one count of robbery, two counts of assault with a deadly weapon and two counts of false imprisonment. In addition, Sipult was charged with two counts of violation of the Deadly Weapons Control Law. By a separate information, defendant James Nole Sipult, Jr. (hereinafter referred to as Junior), was charged with one count of robbery and two counts of false imprisonment. At the trial the two informations were consolidated and, over objection, the consolidated information was amended to add, as to each defendant, a charge of burglary, and, as to Junior alone, two counts of assault with a deadly weapon. Allegations that the defendants were armed at the time of the alleged burglary and robbery were included. Mahi was charged with (and admitted) two prior felony convictions. After a jury trial, each defendant was found guilty of burglary in the first degree and of the two counts of false imprisonment.[1] Motions for new trials as to these counts were denied. Probation was denied. Defendants Sipult, Mahi and Hunt were sentenced

---

[1] The jury was unable to agree on the robbery count and it was dismissed. Although Sipult was also found guilty of the two counts charging violations of the Deadly Weapons Control Law, he was granted a new trial on those counts, and they were thereafter dismissed.

to state prison with concurrent sentences; Junior was committed to the California Youth Authority.

All four appealed from the judgments and from the orders denying new trials. (The latter orders are not appealable— Pen. Code, § 1237.) Hunt and Junior thereafter dismissed their appeals.[2]

A summary of the facts follows: Acting on information that Sipult was dealing in dangerous drugs, two federal agents (Leap and Gates) made contact with him. They posed as Kansas City gangsters interested in purchasing a large quantity of pills. Negotiations for the purchase of the pills continued over several days, at a motel near Huntington Beach and at Sipult's home, during which time the agents met Sipult's "partners," defendants Hunt and Junior. Some pills were purchased, but not in the quantity which the agents represented they wanted. Eventually, the agents were introduced to Mahi, who was stated to be the source of supply of the pills for Sipult and his partners. The agents, following this lead to another link in the chain of supply, phoned Mahi and sought to purchase directly from him. At Mahi's suggestion, they moved into a motel in Los Angeles. Another federal agent (Shane) moved into the next room and set up a microphone and recording device. About midnight of the next day, Mahi phoned, saying he would be over in about 20 minutes. At about 12:30 a.m., Leap answered a knock at the door and was confronted by the four defendants. Sipult had a pistol in his hand which he pointed at Leap, saying

---

[2]Regarding the dismissal of Junior's appeal, initially counsel had been appointed to represent him and an opening brief on appeal was filed in his behalf. On April 30, 1965, pursuant to the express instructions of the defendant, appointed counsel filed with this court a Voluntary Abandonment of Appeal duly executed by defendant. Thereafter, on May 19, 1965, appointed counsel wrote to defendant advising him of the possibility of a reversal of the judgment in the light of a recent U. S. Supreme Court decision (*Griffin* v. *California*, 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106] decided April 28, 1965, No. 202, Oct. term 1964), and asked for a further confirmation of defendant's desire to abandon his appeal. On May 25, 1965, appointed counsel received the following reply:

"Dear Sir, I do not want another trial. I feel I have served my time in youth authority and see no need to bring this trouble up again. I feel whether guilty or not I have learned quite a few things from this school and I want to forget it and start my life as I am now. So forget it all.

Signed James Sipult, Jr."

Since it thus appears that this appellant's action was taken after being fully advised of his rights, we ordered the dismissal of his appeal as requested by him.

(according to Leap): "I am going to blow your head off." The defendants forced Leap back into the room. There followed an acrimonious conversation in which Sipult expressed great anger at what he regarded as an attempt to go behind his back and deal with his supplier, and, thereby, cut him out of a profitable deal. During the conversation, Sipult took a pistol which agent Gates was carrying. After a time, at Gates' suggestion, Hunt and Junior left, using Gates' car, to get liquor. Eventually, after several drinks and some food, the defendants left, taking Gates' gun and car, but with an arrangement to deliver a substantial quantity of pills later that day.

Appellants claim error in the amendment of the information, at the beginning of the trial, to add the burglary count. The contention is without merit. ▉ It is well settled that an information may be amended to add any offense shown to have been committed by the testimony at the preliminary examination, the only limitation being that, the defendant must, if necessary, be given a reasonable continuance to prepare his defense. (Pen. Code, § 1009; Witkin, Cal. Criminal Procedure (1963) §§ 210-214, pp. 198-204.) In the instant case, when the amendment was tendered, defense counsel objected, in his words, "pro forma." He then sought, and was granted, permission to make a motion to dismiss under section 995 of the Penal Code. No other objection to the amendment was made, nor was there any request for a continuance. Clearly, the amendment was anticipated, involved no element of surprise, and introduced nothing not apparent from the preliminary examination.

▉ Appellants, in effect, contend that the evidence does not show that they had the specific intent necessary to commit the crime of burglary. But the testimony of all defendants, and their statements during the hours spent in the motel room with the two federal agents, contain sufficient evidence to show that one purpose for the entry into the agents' room, was to rob them—that this purpose was abandoned is immaterial. ▉ Further, burglary, as defined, and as here charged,[3] can be committed by an entry with the intent to commit "any felony." Clearly, the evidence established that, at the time of the entry, defendants intended to commit false imprisonment. No more was required.

---

[3]Although an indictment or information should charge the particular felony intended (*People* v. *Myers* (1929) 206 Cal. 480 [275 P. 219]), no objection on that point was made here; not having been made, it was waived. (Pen. Code, § 1012.)

Appellant Mahi contends that, since he was invited by the agents to ''come on over'' when he phoned them at midnight, he entered with their consent. But an entry with a concealed intent to commit felony, is burglary, and the apparent consent, having been obtained by fraud, is ineffective. (See 1 Witkin, Cal. Crimes (1963) § 457, pp. 419-420, and the cases therein discussed.)

It is argued that the trial court erred in failing to instruct the jury that intent is a necessary element of the crime of false imprisonment. The jury was instructed that, ''False imprisonment is the unlawful violation of the personal liberty of another.'' The jury was also told: ''You are hereby instructed that to constitute false imprisonment, it is essential that there be some restraint of person, but it is not necessary that there be confinement in jail or prison, and any exercise of force, or express or implied threat of force, by which in fact a person is deprived of his liberty or is compelled to remain where he does not wish to remain, or to go where he does not wish to go, is false imprisonment....''

While, as appellants suggest, it is clear that in order to establish the crime of false imprisonment, the act causing the confinement must have been accomplished with the intention of causing it, and that an instruction on the required union of act and intent would have been proper in this case, (*People* v. *Agnew*, 16 Cal.2d 655 [107 P.2d 601]; Pen. Code, § 20), we do not regard the court's failure to give this instruction as a ground for reversal. Under the undisputed facts, considering the admitted manner of the defendants' entry, the ordering of the agents about at the point of a gun, the using of threatening and profane language, there is no place for an argument, as suggested by appellants, that if the jury had been instructed on the necessity of the union of act and intent, the outcome might have been different. The language of our Supreme Court in *People* v. *Zilbauer*, 44 Cal.2d 43, 50-51 [279 P.2d 534], is particularly applicable here: ''... That testimony [defendant's testimony] itself shows more than the mere drawing of a gun 'in a rude, angry, or threatening manner.' By his own admission the defendant used the gun in such a manner as to terrorize the occupants, and to forcibly deprive them of their personal liberty. They were forced at gunpoint to change positions in the car. They were forced to remain in the car while it was parked on a dark road in an uninhabited area during which time the de-

fendant held them at the point of the gun and threatened to kill one of them. These acts as a matter of law constituted at least one felony, that of false imprisonment.'' We conclude that any error in failing to give the instruction suggested was not prejudicial.

Appellants contend that the trial court, in a colloquy with the jury when it returned for further instructions, misled the jury by making references to what the court denominated ''automatic intent.'' While it is true that such an expression, read by itself, could have been misinterpreted, it is clear from the entire discussion, that the court was referring only to the two counts which charged Sipult with unlawful possession of a dangerous weapon, and that the jury clearly understood the reference to ''automatic intent'' to be so limited. Since the counts charging the Deadly Weapons Control Law violations ultimately were dismissed, we need not consider whether this was a proper instruction with reference to those counts.

As above indicated, the conversation in the motel room was monitored and taped by the agent in the next room. Part of that tape was played to the jury, and it was replayed several times. In addition, the two imprisoned agents and the recording agent each gave testimony as to the conversations. The language used by defendants was foul and obscene. Appellants contend that, with a jury composed partly of women, the repeated replaying of the tape, especially where a verified transcript was available, was prejudicial error. But the prosecution was under a compulsion to corroborate the oral testimony of its official witnesses. The words used by the defendants, the tones of voice, and the context of the individual statements, were an essential part of proving the purpose of defendants in invading the agents' room. Further, tape recordings made under the circumstances here present are not always fully intelligible at first hearing. While objectionable and demeaning matters should not be unnecessarily emphasized, it is primarily for the trial judge to determine, in the context of a particular trial, when the reasonable necessities of the cases have been met. We can see nothing in the present record to support the claim that his discretion was abused in this case.

Appellants appear to contend that the use of the tape recording violated the rule announced in *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. The con-

tention is without merit. Defendants were neither in custody nor were their statements elicited by any process of interrogation.

■ After his arrest, defendant Mahi was interrogated by the police and made several statements which were introduced against him at the trial. Since the jury was properly instructed that these statements were not to be considered as evidence against his codefendants, only Mahi may now object to their use. (See *Paoli* v. *United States,* 352 U.S. 232 [77 S.Ct. 294, 1 L.Ed.2d 278].) ■ Without doubt, these statements fall within the inhibition of *Dorado*: Mahi was clearly a suspect, under arrest, and the interrogation had no purpose other than to secure incriminating statements. It is not suggested that he was warned of his rights. The People contend, however, that the statements were admissions and not confessions, and that the use of admissions (as distinguished from the use of confessions) calls for a reversal only if prejudice in fact resulted. Whether determined to be admissions or a confession, we can only conclude that the statements cannot be said to have been nonprejudicial. Mahi's part in the events which took place after defendants' entry into the agents' room was minor. Without his statements, which clearly indicated his awareness of Sipult's unlawful purposes, a jury might have regarded him as a mere passive observer. The jury deliberated for four days. It is possible that this is attributable to their difficulties with the robbery count, on which they ultimately reported an unresolvable disagreement, but we cannot be sure how much doubt they may have had as to the individual guilt of the various defendants on the other counts. Under the circumstances, the admission of Mahi's statements, unlawfully obtained, requires a reversal of the judgment as to him.

■ The record indicates that Junior (who has abandoned his appeal), did not testify at the trial and that the court, in its instructions, gave (at the People's request) a California Jury Instruction (CALJIC 51), which is, in effect, a comment on the inferences which may be drawn from the defendant's failure to testify. The California comment rule has been held, in the recent United States Supreme Court case of *Griffin* v. *California, supra,* decided April 28, 1965, No. 202, Oct. term, 1964, to be in violation of the Fifth Amendment privilege against self-incrimination as protected against state infringement by the Fourteenth Amendment due process

clause. Defendants Sipult and Mahi argue that they should be entitled to assert this violation of Junior's rights. The court, however, expressly instructed the jury that where evidence was received only as against one defendant, it may not be considered against other defendants. We must presume the jury followed this instruction. (See *Paoli* v. *United States, supra,* 352 U.S. 232.)

Finally, it is contended that the trial court erred in sentencing appellants on all three counts on which guilty verdicts were returned. They argue that this violated section 654 of the Penal Code. We agree. The act of breaking into the room (burglary) and the restraint thereafter placed on the federal agents (false imprisonment) were clearly part of a single transaction for which only one sentence may be imposed. (*People* v. *McFarland,* 58 Cal.2d 748 [26 Cal.Rptr. 473, 376 P.2d 449]; Pen. Code, § 654.) Because burglary carries a greater penalty than false imprisonment, the burglary sentence should remain. (*People* v. *Hicks,* \*(Cal.App.) 44 Cal.Rptr. 141.)

The judgment of conviction of defendant James Nole Sipult, Sr., is modified by vacating the sentences imposed under the two counts of false imprisonment, and in all other respects is affirmed. The judgment of conviction of defendant John Haupu Mahi is reversed.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied June 17, 1965, and the petition of appellant Sipult, Sr., for a hearing by the Supreme Court was denied August 4, 1965. Peters, J., was of the opinion that the petition should be granted.

---

\*Reporter's Note: A hearing was granted by the Supreme Court in *People* v. *Hicks* on June 23, 1965.