584 P.2d 1306

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Virginia ORTIZ and Rolanda Velasquez,
Defendants-Appellants.**

**Nos. 3443, 3448.**

Court of Appeals of New Mexico.

July 25, 1978.

Rehearing Denied Aug. 7, 1978.

Writ of Certiorari Denied Sept. 1, 1978.

John B. Bigelow, Chief Public Defender, Michael Dickman, Asst. Appellate Defender, Sante Fe, for defendants-appellants.

Toney Anaya, Atty. Gen., Suzanne Tanner, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Defendants were convicted of burglary and larceny under $100. No sentence was imposed for the larceny convictions; the appeals are from the burglary convictions. See *State v. Morris*, 69 N.M. 89, 364 P.2d 348 (1961). Defendants were tried jointly, but took separate appeals which are hereby consolidated. The issues involve: (1) unauthorized entry, (2) surrebuttal evidence, and (3) identification of Ortiz.

*Unauthorized Entry*

The victim and her husband operate several businesses in Tucumcari. They keep coins in their home so that change will be available to the businesses when change is needed. On the evening of the crime there was $73.00 in rolled coins in a money bag on a stereo in the living room.

Ronnie Young is acquainted with the victim and her family; he had been a visitor to her home. About 7:00 p. m. he came to the victim's home and talked to the victim who was sitting in an easy chair near the stereo. Ronnie wanted the victim to give him some money; she declined, Ronnie left.

About 8:45 p. m. two females knocked on the victim's door. The victim responded to the knock and was told "there was something the matter with my daughter, that I needed to get hold of her." The females mentioned the daughter by name. This information "shook" the victim up; she asked the females to come in. The victim went to the kitchen where the telephone was located. The victim picked up the telephone but could not remember the telephone number

of her daughter, who was in Albuquerque. "I hung the telephone back up and I heard the door bang, and I looked and the girls was gone." The money bag was missing.

Ronnie Young and the two defendants are good friends; earlier in the day of the burglary the defendants had been with Ronnie. On the day after the burglary, Ronnie returned some rolled coins to the victim's husband.

Section 40A–16–3, N.M.S.A.1953 (2d Repl. Vol. 6) defines burglary in terms of an "unauthorized entry". The evidence is uncontradicted that the victim invited the females into her home. However, the trial court instructed the jury:

> If you find beyond a reasonable doubt that authorization or permission to enter the dwelling . . . was obtained by means of fraud, deceit or pretense, then entry into the dwelling house constitutes entry without authorization or permission.

Defendants contend there was no evidence to support this instruction, but that even if the evidence were sufficient, the instruction is legally incorrect.

There is no direct testimony that the tale told by the females to gain entry was false. However, the evidence was sufficient to present a jury question as to entry by fraud, deceit or pretense. That evidence was: 1) Ronnie's acquaintanceship with both the victim and the defendants; 2) Ronnie's visit to the home on the evening of the crime, enabling him to view the money bag; 3) Ronnie's return of rolled coins on the day after the burglary; and 4) the departure of the females from the home as soon as the victim left the living room, before the telephone call could be made and, thus, before the entry tale could be checked.

Is entry by fraud, deceit or pretense an unauthorized entry? The answer to this question involves the effect to be given to an entry by consent. Where burglary has been defined in terms of entry with the requisite criminal intent or unlawful entry with the requisite criminal intent, it has

been held that consent was no defense to a burglary charge. Annot., 93 A.L.R.2d 531 (1964); *Pinson v. State*, 91 Ark. 434, 121 S.W. 751 (1909); *State v. Montague*, 10 Wash.App. 911, 521 P.2d 64 (1974).

New Mexico requires more than an entry with the requisite criminal intent. The entry must be unauthorized.

The common law defined burglary in terms of breaking and entering. 4 Blackstone's Commentaries (Lewis's Ed.1902) 226–227 states:

[T]o knock at the door, and upon opening it to rush in with a felonious intent; or, under pretence of taking lodgings, to fall upon the landlord and rob him; or to procure a constable to gain admittance, in order to search for traitors, and then to bind the constable and rob the house; all these entries have been adjudged burglarious, though there was no actual breaking; for the law will not suffer itself to be trifled with by such evasions . . . .

The fact of "no actual breaking" did not bar a burglary conviction so long as there was a constructive breaking. *Nicholls v. State*, 68 Wis. 416, 32 N.W. 543, 546, 60 Am.Rep. 870 (1887) states:

[I]t has frequently been held in this country that "to obtain admission to a dwelling-house at night, with the intent to commit a felony by means of artifice or fraud, or upon a pretense of business or social intercourse, is a constructive breaking, and will sustain an indictment charging a burglary by breaking and entering." [Case citations omitted.]

See *Johnston v. Commonwealth*, 85 Pa. 54, 27 Am.Rep. 622 (1877).

Although New Mexico no longer defines burglary in terms of a "breaking", the offense of burglary remains an offense against the security of the property which is entered. See *State v. Tixier*, 89 N.M. 297, 551 P.2d 987 (Ct.App.1976). Where the consent to enter is obtained by fraud, deceit or pretense, the entry is trespassory because the entry is based on a false consent; that is, the entry is outside the consent that was

given. See *State v. Keys*, 244 Or. 606, 419 P.2d 943 (1966). Stated another way, a consent obtained by fraud, deceit or pretense is no consent at all. *People v. Sipult*, 234 Cal.App.2d 862, 44 Cal.Rptr. 846 (1965). Such entries are similar to the constructive breaking at common law.

A trespassory entry would be an unauthorized entry; an entry without consent would be an unauthorized entry. Similarly, entry on the basis of an unauthorized consent would be an unauthorized entry. See *State v. Tolley*, 30 N.C.App. 213, 226 S.E.2d 672 (1976) where it was held that a son's consent to enter the home and steal his parents' valuables was an unauthorized consent.

Whether entry by fraud, deceit or pretense is characterized as trespassory, without consent, or without authorized consent, such an entry is unauthorized. Thus, the trial court did not err in refusing to direct a verdict and did not err in instructing the jury on entry by fraud, deceit or pretense.

*Surrebuttal Evidence*

Defendants presented an alibi defense; that on the night of the burglary and during the time of its commission, they were visiting Michael Davis at his apartment. Davis' testimony supported the defendants. During his cross-examination, Davis testified that he did not work on the evening the crime was committed. According to Davis, he was employed in several capacities—night auditor, cocktail waiter and bartender. Although on a salary, Davis was "pretty sure" his hours of work would be noted and that Weigel "does" the payroll system.

At the conclusion of Davis' testimony, the defendants rested. At the request of defendant Velasquez, without objection, Davis was excused.

The prosecutor called Weigel as a rebuttal witness. She testified that Davis had two days off each week, the slowest days, either a Monday-Tuesday or a Tuesday-Wednesday. The burglary occurred on a Friday. She testified that Davis worked on

the night of the crime; "I have bar tickets with his signature on them." The bar tickets carried a date stamp for the night of the crime and had "Michael" written on them. The only "Michael" employed at this business was Davis.

After rebuttal testimony was concluded, defendant Velasquez testified in surrebuttal. See Rule of Crim.Proc. 40. At the conclusion of Velasquez' testimony the defense rested.

Motions were then argued and ruled on. The instructions were then settled.

After the instructions were settled, Ortiz moved to reopen the evidence and recall Davis as a witness "for an explanation as to how his signature appears on these [bar] tickets" which were dated on the night of the crime. In support of this motion, she tendered some explanatory testimony by Davis.

The trial court denied the motion, explaining that if Davis were allowed to be recalled to testify, the prosecution would want to recall Weigel to contradict Davis. Defendants claim the trial court erred in denying the motion to recall Davis as a witness. We disagree.

■ Whether to permit the case to be reopened for additional testimony is within the discretion of the trial court. *State v. Deaton*, 74 N.M. 87, 390 P.2d 966 (1964); *State v. Wilkerson*, 83 N.M. 770, 497 P.2d 981 (Ct.App.1972). The appellate issue is whether the trial court's ruling was an abuse of discretion.

Davis was excused as a witness at the request of defendant Velasquez. Rebuttal and surrebuttal testimony was presented. The motion to reopen was not made until the instructions had been settled. Denying such a late motion was not an abuse of discretion.

Defendants claim there was an abuse of discretion because Davis was their only alibi witness, that the rebuttal evidence (of signed and dated bar tickets) "was highly damaging and virtually incontrovertible [sic] without Davis' explanation" and the denial of the opportunity to offer an expla-

nation "unreasonably limited defendant's right to present a defense and call witnesses on her behalf." Both defendants testified to other persons allegedly present at Davis' apartment on the night of the crime; there is no showing as to why these other persons could not have been called as alibi witnesses. There was no improper limitation on calling witnesses for the defense. Defendants presented surrebuttal testimony but did not call Davis at that time and did not offer an explanation why they failed to do so. There was no abuse of discretion in denying the motion to reopen in order to call Davis as a witness on surrebuttal.

## Identification of Ortiz

■ The victim "positively" identified Velasquez as one of the burglars. As to Ortiz, "I'm sure she is the one, but I can't positively identify her." The victim identified Ortiz as one of the burglars on the basis of her slim build, her "real pretty eyes and high cheek bones." This in-court identification of Ortiz was sufficient.

> It is not essential for a conviction that a positive identification be made of the accused. It is sufficient if the witnesses testify that in their belief, opinion or judgment the person accused is the person who perpetrated the crime and want of positiveness goes only to the weight of the testimony.

*State v. Williamson*, 78 N.M. 751, 438 P.2d 161, 164 (1968), cert. denied, 393 U.S. 891, 89 S.Ct. 212, 21 L.Ed.2d 170 (1968); *State v. White*, 83 N.M. 354, 491 P.2d 1165 (Ct.App. 1971).

■ Ortiz contends her in-court identification was so impermissibly tainted as to render it invalid.

The victim was unable to describe the second burglar (Ortiz) to the police on the night of the crime. After thinking about it for a day or two, she told the police the second robber was slim, had pretty eyes, high cheek bones, and was wearing some kind of scarf or turban.

After the burglary, the victim next saw Ortiz at the preliminary hearing. The police had told the victim they thought they had the girl who had taken the money. There is no evidence that the victim identified Ortiz at the preliminary hearing; the "taint" claim is what the police told the victim and the victim's observations of Ortiz at the preliminary hearing.

Subsequent to the preliminary hearing, the victim observed Ortiz at a dance. The victim testified that the observations at the dance helped in her identification of Ortiz; that neither the preliminary hearing nor statements by the police affected her identification, "No, I can picture them eyes, those pretty eyes and the high cheek bones."

Whether the victim's identification of Ortiz was impermissibly tainted depends on the totality of the circumstances. *State v. Ellis*, 88 N.M. 90, 537 P.2d 698 (Ct.App. 1975). The statements by the police to the victim and the victim's observations of Ortiz at the preliminary hearing are circumstances to be considered. *State v. Self*, 88 N.M. 37, 536 P.2d 1093 (Ct.App.1975). Other circumstances are: 1) the description to the police a day or two after the crime; 2) the observation of Ortiz at a dance; 3) the lack of identification of any person other than Velasquez; 4) the fact that Ortiz matched the victim's description; 5) the victim's disclaimer that she was influenced by the police or the preliminary hearing; 6) the care with which the victim identified Ortiz—sure but not positive; and 7) the fact that the in-court identification was based on items given to the police prior to the preliminary hearing. With these circumstances, we cannot say the trial court erred in refusing to strike the victim's testimony identifying Ortiz.

The judgment and sentence, for each defendant, are affirmed.

IT IS SO ORDERED.

HENDLEY and HERNANDEZ, JJ., concur.