808 P.2d 633

**MESILLA VALLEY MALL COMPANY, a General Partnership, Plaintiff–Appellant,**

v.

**CROWN INDUSTRIES, d/b/a Lemon Tree, Inc., Jimm J. Crampton and Lana Crampton, Defendants–Appellees.**

**No. 19244.**

Supreme Court of New Mexico.

April 9, 1991.

---

Cresswell & Roggow, Charles W. Cresswell, Las Cruces, for plaintiff-appellant.

Sager, Curran, Sturges & Tepper, Matthew P. Holt, Las Cruces, for defendants-appellees.

## OPINION

RANSOM, Justice.

This appeal is from a decision of the trial court that the lessor had accepted the lessee's surrender of a leasehold, relieving the lessee of any further obligation under the lease. There being substantial evidence to support the factual findings of the trial court, and having no disagreement on the applicable principles of law, we affirm.

The essential facts of this case are few and uncontested. Crown Industries, doing business as Lemon Tree, Inc., occupied retail premises at the Mesilla Valley Mall in Las Cruces under a long-term lease with the Mesilla Valley Mall Company. Lemon Tree had attempted to renegotiate the terms of the lease, but the Mall Company refused to make adjustments. Lemon Tree advised the Mall Company that it simply would vacate the premises, and it did so on January 20, 1989. Rent was paid only to February 1, and the unpaid rent under the unexpired portion of the lease totaled $35,-056.58.

The Mall Company repossessed the premises and, beginning on February 1, 1989, allowed the Las Cruces Museum of Natural History to occupy the space rent free in the interest of promoting good community relations. The Museum remodeled the premis-

es for its own use and has occupied the premises continuously since it first took possession. The Mall Company describes the Museum as a tenant at sufferance. In the past, the Museum has occupied several locations in the Mall. The Museum occupied these locations, and the space at issue in this case, with the understanding that it would immediately vacate the premises at the request of the Mall Company should another rent-paying tenant become available.

In April 1989 the Mall Company brought suit to collect all amounts due under the lease. At trial Lemon Tree raised the affirmative defense of surrender and acceptance. The trial court determined that after the lessee had abandoned the property the Museum's rent-free tenancy was for the benefit of the lessor and not the lessee, and that this use was inconsistent with the rights of the lessee. Specifically, the court found "nothing in the lease agreement allowed the Mall to re-enter the property for any other purpose [than to relet for the benefit of the tenant], and, in particular to re-lease the property for no rent and for its own benefit." The court concluded that under the doctrine of surrender and acceptance the lease agreement terminated on February 1, 1989.

 In the absence of legal justification, a tenant who abandons occupancy before the expiration of a lease remains liable for rent for the remainder of the term; and, under traditional common-law property rules, the landlord is under no obligation to relet the premises to mitigate the tenant's liability under the lease. 2 R. Powell, *The Law of Real Property* ¶ 249[1] (1991); *Restatement (Second) of Property, Landlord & Tenant* § 12.1(3) (1977). The landlord, however, may elect to retake possession on behalf of the tenant and to relet the premises for the tenant's account. *Noce v. Stemen,* 77 N.M. 71, 419 P.2d 450 (1966);

*Heighes v. Porterfield,* 28 N.M. 445, 214 P. 323 (1923). Or, the landlord may choose to accept what is in effect the tenant's offer to surrender the leasehold, thereby terminating the lease and leaving the tenant liable only for rent that accrued before the acceptance. *Id.; Restatement (Second) of Property, Landlord & Tenant* § 12.1(3)(a) (1977).

 A surrender and acceptance of the lease may arise either from the express agreement of the parties or by operation of law. *Elliott v. Gentry,* 40 N.M. 358, 60 P.2d 203 (1936). Here, there is no contention that there was a surrender and acceptance by express agreement of the parties.[1] A surrender by operation of law only can occur when the conduct of the landlord is inconsistent with the continuing rights of the tenant under the lease. 2 R. Powell, *The Law of Real Property* ¶ 249[1] (1991). Thus, where the landlord has reappropriated the property for his own use and benefit and not for the benefit of the original tenant as well, surrender and the acceptance results by operation of law. *Weingarten/Arkansas v. ABC Interstate Theatres, Inc.,* 31 Ark.App. 109, 789 S.W.2d 1 (1990). Cancellation of the lease occurs under principles of estoppel, *Riggs v. Murdock,* 10 Ariz.App. 248, 458 P.2d 115 (1969), because it would be inequitable for either landlord or tenant to assert the continued existence of the lease. *Ingleside Properties, Inc. v. Redfish Bay Terminal,* 791 S.W.2d 217 (Tex.Ct.App.1990).

 In this case Lemon Tree claims the Mall Company relet the premises solely for its own benefit. The Mall Company admits the presence of the Museum attracts large numbers of potential customers to the Mall and so benefits the Mall Company and its tenants, but the Mall Company claims its actions were permissible under the lease and the lease is controlling. In this case it is true that the lease

---

1. Lana Crampton, the principal in Lemon Tree and a real estate broker, learned prior to the end of January that the Mall Company had re-entered the premises and had begun to build it out for a different use, and that the Museum took the space by February 1. She testified that it was her belief that the space had been rented to a new tenant, and she, therefore, did not undertake to try to procure a replacement tenant, it being her understanding, not that the lease was terminated, but that she might be responsible for the difference in rent between that being paid by the new tenant and that which she had agreed to pay.

provides the lessor may relet the premises without terminating the lease. When a clause in a lease permits the landlord to relet the premises, the clause creates a presumption that the re-entry and reletting of the premises was not the acceptance of a surrender or a termination of the lease. *Collet v. American Nat'l Stores, Inc.,* 708 S.W.2d 273 (Mo.Ct.App.1986). However, the reletting still must be for the benefit of the original tenant as well as for the justifiable ends of the landlord. If not, the landlord's actions would be inconsistent with a continued landlord-tenant relationship to which the landlord seeks to hold the tenant. We are in substantial agreement on this point with the discussion of Milton R. Friedman in his respected treatise on leases.

> Any reletting under a survival clause must be for the tenant's benefit in order to preserve the landlord's rights under the clause. A tenant is released, despite a survival clause, if the landlord resumes possession for his own use. A tenant is also released when a landlord relets to a third person rent-free—a result fair enough in view of the lack of benefit to the original tenant. Reletting with a rent concession does not release the original tenant but abates his liability for the period covered by the concession.

2 M. Friedman, *Friedman on Leases* § 16.302, at 1001 (3d ed. 1990) (footnotes and citations omitted).

The lease provisions in this case regarding reletting are consistent with these principles; that is, the lease itself suggests that any reletting will benefit the original tenant. The lease states that if the landlord elects to relet in the event of abandonment of the leased premises, then *rentals received* by the landlord shall be applied against the debts of the tenant who shall remain liable for any deficiency, and any residue shall be held by the landlord and applied in payment of future rent as it becomes due. The lease clearly anticipates *some* payment of rent and in no way suggests that the Mall Company can simply donate the occupancy of the premises to a third party or use the property for any purpose whatsoever.

We believe there was substantial evidence to support the court's finding that the re-entry was for the lessor's own benefit and not for the benefit of the tenant. Consequently, that finding is binding upon us even though there was strong evidence to support a finding to the contrary.[2] The court's conclusion necessarily follows: The Mall Company accepted the surrender of the lease and the lease was terminated by operation of law on February 1, 1989. For these reasons we affirm the judgment of the trial court.

We remand for the trial court to hear and decide the issue of attorney fees to which Lemon Tree may be entitled on appeal under the provision of the lease agreement that the party prevailing in any action brought thereunder shall be entitled to recover its attorney fees.

IT IS SO ORDERED.

SOSA, C.J., and BACA, J., concur.

---

**2.** The Mall Company made efforts to re-lease the premises by advertising the space at national trade shows, and by showing the premises to persons or businesses interested in leasing premises in the mall. The Museum understood that it would be required to move on as little as one day's notice if a paying tenant were found for the space. The leasing agent testified the Museum's occupancy in no way affected his ability to relet the premises. The lease provided that re-entry by the Mall Company "shall [not] be construed as an election to terminate this lease nor shall it cause a forfeiture of rents or other charges remaining to be paid during the balance of the term hereof, unless a written notice of such intention be given." No written notice was given Lemon Tree.