This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date: May 6, 2024**

**No. S-1-SC-39377**

**STATE OF NEW MEXICO,**

        Plaintiff-Appellee,

v.

**JOHN D. POWELL,**

        Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Jason C. Lidyard, District Judge**

Harrison, Hart & Davis, LLC
Daniel Gallegos
Nicholas T. Hart
Albuquerque, NM

for Appellant

Raúl Torrez, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**THOMSON, Chief Justice.**

## I.        INTRODUCTION

**{1}**        In this capital appeal, John D. Powell (Defendant) challenges his convictions of three counts of first-degree murder and one count of aggravated burglary. *See* Rule 12-102(A) NMRA; *see generally* NMSA 1978, § 30-2-1(A)(1) (1994); NMSA 1978, § 30-16-

4(A) (1963). Defendant advances the following reasons his convictions should be reversed: (1) that there was insufficient evidence of specific intent to support the three first-degree murder convictions, (2) that there was insufficient evidence of an "unauthorized entry" into the house where the murders were committed to prove the aggravated burglary charge, and (3) that the prosecutor misstated the law during rebuttal argument, lowering the State's burden in proving the unauthorized entry. Defendant adequately preserved the first and second claims of error but not the third.

**{2}** We conclude that there was overwhelming evidence to support Defendant's first-degree murder convictions, and while the district court misinterpreted New Mexico law on unauthorized entry under false pretense, we hold that the court correctly denied Defendant's directed verdict motion for aggravated burglary. Further, any misstatement made by the prosecutor during rebuttal argument did not rise to the level of fundamental error, the appellate standard for this unpreserved claim of error. New Mexico appellate courts have previously addressed the legal issues underlying this case. Accordingly, the convictions are affirmed by nonprecedential decision. *See* Rule 12-405(B)(1) NMRA.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

**{3}** In the early morning hours of May 29, 2018, surveillance cameras implicated Defendant and his brother, Roger Gage ("Brother"), in the murders of Abraham Martinez, Kieren Guillemin, and April Browne. The murders occurred in Ms. Browne's bedroom. Defendant was no stranger to Ms. Browne. In the months just before the murders, Defendant and his girlfriend, Sonya Chavez, lived with Ms. Browne in exchange for work and paying bills. As part of the in-kind rent payments, Defendant acted as security for Ms. Browne's drug operation, which included installing a video surveillance system around the interior and exterior of the home.

**{4}** Six days before her murder, Ms. Browne accused Ms. Chavez of stealing drugs. Ms. Chavez denied the accusation and texted Ms. Browne to inform her she would leave Ms. Browne's home. Later that day, Defendant and Ms. Chavez packed up their belongings and left.

**{5}** Defendant returned with Brother to Ms. Browne's residence in the early morning hours of May 29, ostensibly seeking drugs and other items he left after moving out. Rather than park on the driveway, the two stopped down the hill from the house and walked up an unlit rocky trail in the dark. Once at the house, Defendant entered through the unlocked back door. Inside Ms. Browne's bedroom, the surveillance system Defendant installed captured the entirety of the murders and theft of a safe and laptops.

**{6}** Defendant was indicted on six counts, including three counts of first-degree murder, aggravated burglary, conspiracy to commit first-degree murder, and tampering with evidence. The State amended the indictment to include the alternative theory of felony murder. Following the presentation of the State's evidence, Defendant moved for a directed verdict on all counts. The district court denied the motion in full except for the tampering charge related to the stolen safe and laptops.

**{7}** After a seven-day trial, Defendant was convicted of three counts of first-degree murder, one count of aggravated burglary, and one count of conspiracy to commit first-degree murder. The jury returned special verdict forms for the first-degree murder charges, finding Defendant guilty of both willful and deliberate murder and felony murder. The district court sentenced Defendant to three consecutive life sentences plus eighteen years for the aggravated burglary and conspiracy convictions. Defendant now appeals and requests review of the sufficiency of the evidence supporting the first-degree murder and aggravated burglary convictions and challenges the prosecutor's statements during rebuttal.

## III. DISCUSSION

### A. Sufficiency of the Evidence – First-Degree Murder

**{8}** Defendant admitted at trial that he killed Ms. Browne and fired the second shot into Mr. Guillemin. However, Defendant claims that the State offered no evidence of premeditation or preplanning and that the murders were "a rash act" resulting from the effects of drug withdrawal. The evidence rebuts this claim.

**{9}** "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (quoting *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176). This Court "does not evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence." *State v. Graham*, 2005-NMSC-004, ¶ 13, 137 N.M. 197, 109 P.3d 285 (internal quotation marks and citation omitted).

**{10}** The "jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *Holt*, 2016-NMSC-011, ¶ 20 (quoting *State v. Arrendondo*, 2012-NMSC-013, ¶ 18, 278 P.3d 517). New Mexico's statutory scheme distinguishes between intentional killings that are "willful, deliberate, and premeditated" and sufficient for first-degree murder, and those committed without such deliberation but with the Defendant's awareness that his "acts create a strong probability of death or great bodily harm." Section 30-2-1(A)(1), (B). As this Court has noted, "[F]irst degree murder is reserved for the most heinous and reprehensible of killings." *State v. Tafoya*, 2012-NMSC-030, ¶ 38, 285 P.3d 604 (quoting *State v. Adonis*, 2008-NMSC-059, ¶ 15, 145 N.M. 102, 194 P.3d 717 (internal quotation marks omitted)). The unaltered uniform instruction used at trial here reflected the distinction between first- and second-degree murder, defining a deliberate intent as one that is arrived at after "careful thought . . . for and against the proposed course of action." UJI 14-201 NMRA. The instruction noted that the "state of mind of the defendant" may be "inferred from all of the facts and circumstances of the killing." *Id.* And while Defendant may have arrived at his decision "in a short period of time[,] [a] mere unconsidered and rash impulse" is not sufficient deliberation. *Id.* "Although a seemingly straightforward distinction to draw, time has shown that sometimes this is far from the case." *Tafoya*, 2012-NMSC-030, ¶ 38.

**{11}** In this case, the jury had ample evidence to conclude Defendant's acts were deliberate, and that the distinction described in *Tafoya* was easy to discern. *Id.* This includes Defendant's own testimony that he drove with Brother for over an hour to Ms. Browne's house, armed, late at night, purportedly to get his tools and purchase a small quantity of drugs. Once he arrived, he parked at the bottom of the hill, taking the more difficult rocky path to the house that was out of view of the security cameras he had installed.

**{12}** The jury also saw surveillance footage of Defendant's actions inside the house. The camera captured Ms. Browne's bedroom from the foot of her bed. In the video, Ms. Browne rests on the left side of the bed while Mr. Martinez sleeps on the right. On the left side of the frame, Mr. Guillemin sits in a chair by the door Defendant and Brother use to enter the room. Brother begins the attack from outside the room, shooting Mr. Guillemin as he turns to peer through the doorway. Brother quickly enters the room, with Defendant in lockstep behind. Brother then shoots Mr. Martinez from across the bed as Defendant walks directly up to Ms. Browne and, at point-blank range, fires a round into her head. Defendant proceeds directly to a dresser on the far right side of the frame and removes a safe from one of its drawers. On his way out of the room, Defendant pauses to discharge two additional rounds, one each into Mr. Guillemin and Ms. Browne. The entire assault, including removing the safe and laptops, lasted only fifty-two seconds. A juror could reasonably determine that the precisely choreographed actions in the video demonstrate the type of careful thought sufficient for deliberation. *See* UJI 14-201.

**{13}** Finally, Defendant argues that the killing resulted from a "rash impulse" related to drug withdrawal. However, Defendant cites no case law supporting the proposition that drug withdrawal is a defense to deliberation. *Compare State v. Fekete*, 1995-NMSC-049, ¶ 32, 120 N.M. 290, 901 P.2d 708 (affirming a first-degree murder conviction challenged on sufficiency grounds after a district court refused to include an instruction related to diminished capacity resulting from drug withdrawal), *with State v. Brown*, 1996-NMSC-073, ¶ 27, 122 N.M. 724, 931 P.2d 69 ("Intoxication may affect mental processes and prevent a person from either coolly deliberating or subjectively realizing that his or her act creates a very high degree of risk to the lives of others."). Further, Defendant admitted that he and his brother "weren't sick sick sick [from withdrawal] because [they] had gotten some [drugs] previously the day before," minimizing the effects of withdrawal on his ability to "consider . . . reasons for and against" killing, UJI 14-201. Therefore, a reasonable juror could have easily determined that these acts supported the type of "calculated judgment and decision [that] may be arrived at in a short period of time." *See id.*

## B. Aggravated Burglary – Unauthorized Entry

**{14}** At the close of State's evidence, Defendant argued there was insufficient evidence to support an aggravated burglary conviction because Defendant had authorization to enter Ms. Browne's residence. *See* § 30-16-4 ("Aggravated burglary consists of the *unauthorized entry* of any . . . structure . . . with intent to commit any felony or theft therein . . . ." (emphasis added)). Defendant advanced two theories: (1) Defendant retained his residency rights despite having moved out the week prior and

(2) Ms. Browne, in her capacity as a drug dealer, impliedly authorized members of the public to enter her home to conduct business at all hours of the day and night. The district court denied the motion, circumventing Defendant's two theories of authorized entry and concluding on different grounds that Defendant's silent felonious intent sufficiently proved unauthorized entry regardless of his residency status or the presence of an implied license. Defendant challenges this holding as conflicting with New Mexico case law while also renewing both theories of authorized entry.

**{15}** We review a district court's denial of a motion for a directed verdict de novo. *McNeill v. Burlington Res. Oil & Gas* Co., 2008-NMSC-022, ¶ 36, 143 N.M. 740, 182 P.3d 121. Our review asks whether "sufficient evidence was adduced to support the underlying charge." *State v. Baca*, 2015-NMSC-021, ¶ 31, 352 P.3d 1151. "A directed verdict . . . requires a court to decide at the conclusion of the state's case whether the direct or circumstantial evidence admitted at trial, together with all reasonable inferences to be drawn therefrom, will sustain a finding of guilt beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted).

**{16}** The district court denied Defendant's motion using a suppositional framework. The court stated that "*even if* a rental agreement was in place . . . which allowed [Defendant] entry into the residence" and "*even assuming* that the conduct of [Defendant] and Ms. Chavez did not forfeit possession to the property back to the owner" and "*even under* the theory that the home was open to anyone who pleased to arrive for the purchase of drugs," the entry was unauthorized because of the intent of Defendant and Brother to commit the charged acts. (Emphasis added.) The court's reasoning was that Defendant's entry as a tenant "would have been based on a *false pretense* of entering for the lawful purpose of peacefully residing . . . ." (Emphasis added.) The court concluded, "The intent of those individuals was to enter into that residence undetected, armed with firearms to commit the acts which are contained on the video. Those types of actions are [] never authorized . . . ."

**{17}** The district court correctly denied Defendant's motion for directed verdict, but its justification relied on an incorrect interpretation of unauthorized entry by false pretense. However, under the right for any reason doctrine, this Court will affirm the district court's ultimate conclusion so long as "the circumstances do not make it unfair to the appellant to affirm." *State v. Serna*, 2018-NMCA-074, ¶ 29, 429 P.3d 1283; *State v. Vargas*, 2008-NMSC-019, ¶ 8, 143 N.M. 692, 181 P.3d 684 ("Under the right for any reason doctrine, we may affirm the district court's order on grounds not relied upon by the district court if those grounds do not require us to look beyond the factual allegations that were raised and considered below." (internal quotation marks and citation omitted)).

**{18}** An aggravated burglary "consists of the unauthorized entry of any . . . dwelling or other structure . . . with intent to commit any felony or theft therein . . . ." Section 30-16-4. Thus, the state must prove unauthorized entry and intent to commit a felony or theft as separate elements. *See* UJI 14-1632 NMRA. The district court's rationale merges the statute's two requirements for a conviction into one, easing the prosecution's burden. Under the district court's reasoning, whenever an individual enters a dwelling or structure with felonious intent, the entry is unauthorized. Problematically, this allows a

defendant's intent to commit a felony or theft to simultaneously satisfy the prosecution's burden to prove that the entry is unauthorized. The practical effect of the district court's holding is that burglary may subsume other crimes. For example, merely entering a retail store intending to shoplift would be sufficient for burglary, elevating a defendant's charge from a petty misdemeanor to a third-degree felony. NMSA 1978, § 30-16-3(A) (1971) (burglary); NMSA 1978, § 30-16-20(A), (B)(1) (2023) (shoplifting); *see also State v. Baca*, 2014-NMCA-087, ¶ 13, 331 P.3d 971 ("If our Legislature intended to penalize as burglars all individuals who enter a retail store with the intent to shoplift, it could have structured our statute to reflect that intention.").

**{19}** The Court of Appeals in *State v. Ortiz* correctly determined that entries obtained by fraud or deceit are unauthorized for purposes of a burglary conviction. 1978-NMCA-074, ¶¶ 13, 15, 92 N.M. 166, 584 P.2d 1306. In that case, two women knocked on the victim's door, falsely claiming that there was an emergency relating to her daughter. *Id.* ¶ 4. The victim invited the women inside, at which point the women robbed the unsuspecting mother. *Id.* A technical reading of New Mexico's burglary statute might preclude enforcement because the victim opened the door and invited the robbers inside the house,[1] authorizing their entry at the moment they walked into the home. The court's thorough opinion disagreed, holding that when entry is *obtained* by fraud, deceit, or pretense, the entry is unauthorized. *Id.* ¶ 15; *see also id.* ¶ 13 ("[C]onsent *obtained* by fraud, deceit or pretense is no consent at all." (emphasis added)).

**{20}** Here, the district court did not determine that consent was *obtained* through fraud or deceit, *see id.* ¶ 15, but rather maintained that Defendant's entry was unauthorized because he entered under "a false pretense in the sense that [residing or buying drugs] was not his purpose for entering." Unlike *Ortiz*, Ms. Browne's consent was not obtained through communication or artifice. In the district court's view, merely the intent that Defendant and Brother secretly held when they entered the property made the entry unauthorized. Thus, the district court's decision that an unauthorized entry may result solely from a surreptitious intent—absent any indication that the entry was obtained through fraud or deceit—is contrary to *Ortiz*'s clear holding that "New Mexico requires more than an entry with the requisite criminal intent." 1978-NMCA-074, ¶ 10.[2]

**{21}** The State counters that *State v. James*, a post-*Ortiz* decision, supports the proposition that a felonious intent may make an otherwise legitimate entry unauthorized. 1980-NMSC-082, ¶ 6, 94 N.M. 604, 614 P.2d 16. There, this Court noted that the "appellant entered the bank with the intent to commit larceny. Having entered the bank under this pretense, appellant's presence became an unauthorized one." *Id.* (citing *Ortiz*, 92 N.M. at 168, despite *Ortiz*'s attendant authorization mandate for burglary of "more than an entry with the requisite criminal intent").

---

1 *Unauthorized entry* is an essential element for both burglary and aggravated burglary convictions. *See* §§ 30-16-3, -4.

2 *Ortiz* continues to be cited favorably, by our courts and others. *Baca*, 2014-NMCA-087, ¶ 13; *State v. Sorrelhorse*, 2011-NMCA-095, ¶ 19, 150 N.M. 536, 263 P.3d 313; *State v. Brown*, 911 N.W.2d 180, 184 (Iowa Ct. App. 2018).

**{22}** We do not read *James* as being inconsistent with *Ortiz*'s holding that an unauthorized entry under false pretense requires a fraudulently obtained consent. The *James* Court was concerned with whether a now-repealed New Mexico habitual offender statute applied to two federal violations, bank robbery and conspiracy to commit bank robbery. *James*, 1980-NMSC-082, ¶ 6; *see* NMSA 1978, § 31-18-5 (1963) (repealed 1977). The Court found that neither federal offense existed under New Mexico law but held that New Mexico's burglary statute was a suitable proxy felony to the bank robbery and conspiracy convictions for the sentencing statute to apply. *James*, 1980-NMSC-082, ¶ 6. Importantly, neither the bank robbery nor the burglary offenses were adjudicated under New Mexico law. Therefore, the Court did not substantively analyze unauthorized entry. Additionally, at barely a page in length, the decision lacks a description of the underlying acts leading to the federal conviction. Given that *James* cites *Ortiz* for support, we can only assume the defendant fraudulently *obtained* consent. In any event, *James* should not be read beyond the context of the habitual offender statute, repealed in 1977 by our Legislature.

**{23}** The district court's misinterpretation of *Ortiz* is not a fatal defect. Because our review is de novo, we analyze Defendant's remaining two theories of authorized entry "without deference to the district court's legal conclusions" to determine whether the district court's holding was correct. *Primetime Hosp., Inc. v. City of Albuquerque*, 2009-NMSC-011, ¶ 10, 146 N.M. 1, 206 P.3d 112.

## 1. Defendant's Possessory Rights in Ms. Browne's Residence

**{24}** Defendant asserts that there is insufficient evidence to support his aggravated burglary conviction because he had possessory rights as a resident in Ms. Browne's home, precluding the possibility that his entry could be unauthorized.[3] Defendant correctly notes that New Mexico allows for the formation of an oral lease and in-kind rent payments. *See* NMSA 1978, § 47-8-3(O)-(Q) (1999). Here, Ms. Chavez's testimony that she and Defendant performed various services in exchange for living with Ms. Browne supported the presence of an agreement. However, Ms. Chavez testified that when she was accused of stealing drugs from the house, she texted Ms. Browne that she was leaving. Ms. Browne replied, "That's up to you."[4] Defendant argues that a jury could not have determined a surrender of the lease occurred because "there was no express agreement." We disagree.

**{25}** Typically, a tenant who abandons a lease is responsible for the remainder of the term. *Mesilla Valley Mall Co. v. Crown Indus.*, 1991-NMSC-033, ¶ 5, 111 N.M. 663, 808 P.2d 633. However, a landlord may choose to accept the tenant's surrender, terminating the lease and absolving the tenant of their responsibilities. *Id.* "A surrender and acceptance of the lease may arise either from the express agreement of the parties or

---

3 Defendant did not move to adjust the aggravated burglary jury instruction to include anything regarding business visitors or residency rights. Thus, the jury determined what constituted an unauthorized entry. Effectively, Defendant's argument is that as a matter of law, there is no set of facts that a jury could rely on to find that Defendant had relinquished his residency rights or that Ms. Browne's residence was not open to the public on the night of the murders.

4 The district court denied the introduction of the text messages into evidence as prohibited hearsay.

by operation of law." *Id.* ¶ 6 (citing *Elliott v. Gentry*, 1936-NMSC-050, 40 N.M. 358, 60 P.2d 203 (1936)). This Court, in *Gentry*, addressed surrender by express agreement:

> A surrender in fact is made by express words, clearly manifesting the intention of the lessee to yield up his interest. To constitute an express surrender, no set form of words is necessary, nor is it required that there should be a formal re-delivery or cancellation of the lease; all that is requisite is the agreement and assent of the proper parties manifesting their intent, followed by a yielding up of the possession to him who hath the greater estate.

*Gentry,* 1936-NMSC-050, ¶ 25 (emphasis, internal quotation marks, and citation omitted). Thus, a surrender has two components: the agreement and the yielding of possession. Ms. Browne's purported statement that it was up to the other party is somewhat ambiguous as to an express agreement. However, this is a factual issue appropriate for jury consideration and not for a directed verdict. *Segura v. Molycorp, Inc.*, 1981-NMSC-116, ¶ 24, 97 N.M. 13, 636 P.2d 284 ("[W]hen the existence of contract is at issue and the evidence is conflicting or admits of more than one inference, it is for the jury to determine whether the contract did in fact exist."); *Sanchez v. Gomez*, 1953-NMSC-053, ¶ 8, 57 N.M. 383, 259 P.2d 346. ("The basis for a directed verdict, therefore, is the absence of an issue for a jury to resolve."). Thus, on appeal, this Court's inquiry is limited to whether sufficient facts support a surrender of the lease. Here, Ms. Chavez's testimony of the text-message exchange provides an adequate basis for the formation of an express agreement of surrender. A juror could reasonably infer that Ms. Browne permissively allowed the termination of the oral lease, at Ms. Chavez's discretion, requiring nothing further. *See Mesilla Valley Mall Co.*, 1991-NMSC-033, ¶ 5. Fulfilling the second prong in the surrender analysis, Ms. Chavez and Defendant yielded possession by packing their belongings and leaving Ms. Browne's house. Thus, a rational juror could have reasonably inferred that Defendant and Ms. Chavez surrendered their interest in Ms. Browne's property, immediately terminating their oral lease. Absent another theory providing consent, Defendant's entry on the night of the murders would be unauthorized.

### 2. Implied License to Enter Ms. Browne's House

**{26}** Defendant also contends that because "[m]embers of the public were essentially granted unfettered access to Ms. Browne's home, day and night, . . . [Defendant] had implied permission to enter [the] home." Defendant's position is that Ms. Browne's house is analogous to a retail store open twenty-four hours a day to serve any customer that enters. *See State v. Rogers*, 1972-NMCA-053, ¶ 7, 83 N.M. 676, 496 P.2d 169; *State v. Tower*, 2002-NMCA-109, ¶ 7, 133 N.M. 32, 59 P.3d 1264. This premise is successful only if the record lacks evidence that "a rational factfinder could have relied upon" to find that Ms. Browne's residence was not open at the time Defendant entered the premises. *State v. Baca*, 2019-NMSC-014, ¶ 28, 448 P.3d 576. The evidence presented by the State suggested that: (1) Ms. Browne only transacted with a limited number of customers, (2) most of those customers were regulars, (3) foot traffic at night was limited, and (4) the front door, as the only door with a security camera, was locked

the night of the robbery. Thus, there was ample evidence for a rational juror to infer that Ms. Browne's house was neither open to the public twenty-four hours a day, seven days per week, nor that it was open for business at the particular time Defendant entered.

## C.    The Prosecutor's Closing Argument in Rebuttal Did Not Shock the Conscience

{27}    Defendant's final argument is that the prosecutor misstated the law regarding unauthorized entry in its rebuttal argument. Defendant concedes he did not preserve this argument at trial, so reversal calls for our determination of fundamental error. *State v. Castillo*, 2011-NMCA-046, ¶ 28, 149 N.M. 536, 252 P.3d 760. "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633. To rise to the level of fundamental error, a prosecutor's conduct must be "so egregious and ha[ve] such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728 (internal quotation marks and citation omitted). Thus, "we will upset a jury verdict only (1) when guilt is so doubtful as to shock the conscience, or (2) when there has been an error in the process implicating the fundamental integrity of the judicial process." *State v. Sosa*, 2009-NMSC-056, ¶ 35, 147 N.M. 351, 223 P.3d 348.

{28}    The prosecutor told the jury that "maybe [Defendant] had authorization to buy drugs there, all right, but he didn't have authorization to go in there and kill everybody inside that residence." Defendant argues that the State's characterization of intent and unauthorized entry misstates the law. *See* Section III.B, *supra*. However, "[a]lleged misstatements of the law . . . in the State's closing argument do not [always] require reversal." *State v. Armendarez*, 1992-NMSC-012, ¶ 10, 113 N.M. 335, 825 P.2d 1245. The comments are best analyzed "objectively in the context of the prosecutor's broader argument and the trial as a whole." *Sosa*, 2009-NMSC-056, ¶ 26. Assuming the prosecutor misstated the law, this Court has provided three factors for analyzing whether a prosecutor's comments during closing argument rise to the level of fundamental error: "(1) whether the statement invades some distinct constitutional protection; (2) whether the statement is isolated and brief, or repeated and pervasive; and (3) whether the statement is invited by the defense." *Id.*

{29}    As to the first factor, the prosecutor's comments here do not invade the constitutional protections commonly recognized by this Court when it has found reversible error. *But see Garcia v. State*, 1986-NMSC-007, ¶¶ 8, 11, 103 N.M. 713, 714 P.2d 1375 (holding that a prosecutor's comments regarding a defendant's right to refuse a warrantless search was reversible error); *State v. Sena*, 2020-NMSC-011, ¶ 22, 470 P.3d 227 (holding that a prosecutor's comments regarding a defendant's demeanor during trial violated the defendant's Fifth Amendment right not to testify). The second factor also weighs towards admissibility since convictions are consistently upheld where the "prosecutor's impermissible comments are brief or isolated." *Sosa*, 2009-NMSC-056, ¶ 31. The challenged statements span a minute out of the State's fifty-five-minute closing and rebuttal. This lessens the probability that "the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *Sosa*,

2009-NMSC-056, ¶ 35. In addition to being brief, the remarks were isolated and were neither a recantation of an impermissible theme nor a lengthy, detailed series of remarks. *But see Garcia v. State*, 1986-NMSC-007, ¶ 6; *State v. Henderson*, 1983-NMCA-137, ¶¶ 11, 15, 100 N.M. 519, 673 P.2d 144 (reversing the defendant's conviction for the prosecutor's lengthy, unnecessary, and prejudicial remarks based on another case).

{30}　Turning to the third factor, the State's comments were in response to Defendant's closing argument. The prosecutor begins by stating that "Defense would have you believe that [D]efendant had authorization to enter into that residence." The comments were a reply to defense counsel's claim that Defendant "did not lose any authorization" and that "he was more authorized to come in than just the general purchaser" because "he did not lose any sort of permission." The State was essentially compelled to respond. "Having opened the door, Defendant cannot now split semantic hairs over the prosecutor's choice of words." *Sosa*, 2009-NMSC-056, ¶ 39.

{31}　Finally, as noted in Section III.B's analysis, there is substantial evidence suggesting Defendant's entry was unauthorized. "If the prejudicial effect is minimal and the evidence of the defendant's guilt overwhelming, the error does not rise to the level of fundamental error." *State v. McDowell*, 2018-NMSC-008, ¶ 18, 411 P.3d 337. This is not the type of "swearing match" between Defendant and State where error may tip the balance between equally plausible versions of events. *Henderson*, 1983-NMCA-137, ¶ 11.

{32}　Therefore, even if the prosecutor's comments were erroneous, they fall well short of fundamental error.

## IV.　CONCLUSION

{33}　For the foregoing reasons, we affirm Defendant's aggravated burglary and three first-degree-murder convictions.

{34}　**IT IS SO ORDERED.**

**DAVID K. THOMSON, Chief Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**JULIE J. VARGAS, Justice**

**BRIANA H. ZAMORA, Justice**